## Otis R. Johnson and another v. Robert M. Moore.

*Deed: Delivery: Time: Acknowledgment: Presumption.* In the absence of any showing to the contrary the time of the delivery of a deed will be presumed to have been the same as the date of its acknowledgment.

*Contract construed: License: Timber: Title.* A contract in writing executed by the grantee in a warranty deed and dated the day of the acknowledgment of the deed, which, after reciting the purchase of the land, provides, that "all the sawing pine and whitewood timber that is now upon the above described tracts of land belongs to" the grantor named in such deed, "who is sole owner thereof," and that he "has by agreement, thirty months from this

date to remove the same," is something more than a revocable license, and operates to secure to such grantor as against his grantee, and all others having notice thereof, the existing ownership of such of the timber as he should take off in thirty months.

*Deed: Contract: Construction.* Such contract and the deed are to be read and construed together as parts of a single transaction.

*Contract construed.* Such a contract held, in the absence of any showing that any part of the timber referred to had been cut down, not to be limited in its application to severed timber only, but to include the standing timber.

*Notice: Evidence.* There was sufficient evidence of notice of such contract in this case to warrant the submission of the question to the jury.

*Replevin: Logs: Detention: Charge to the jury.* The record showing that the defendants asserted a right of property and of possession adverse to the plaintiff and inconsistent with his claim, and nothing of a contrary tendency appearing, the charge to the jury, that the detention of the logs was not disputed, is held not to be error.

*Heard May 16. Decided October 8.*

Error to Allegan Circuit.

*M. S. Bowen* and *Moore & Moore,* for plaintiffs in error.

*Williams & Humphrey* and *F. J. Littlejohn,* for defendant in error.

GRAVES, J.

The controversy in this case originated in conflicting claims to certain timber cut on the south half of the south east quarter of° section 19, and the south west quarter of section 20, in township 4 north, of range 13 west, in this state. The defendant in error recovered in replevin that portion of it consisting of pine, and the plaintiffs in error complain of rulings at the trial.

The bill of exceptions indicates numerous questions, but a portion seem to have been abandoned, and some others are not regularly raised, or are so clearly untenable as not to justify discussion. I gather from the record and the brief of plaintiffs in error that there are but three or four points which are worthy of examination.

The defendant in error, Robert M. Moore, being owner of the land on which the timber was afterwards cut, conveyed it to one William Bradley by warranty deed dated

November 19th, 1866, but acknowledged on the 21st of the same month. Bradley by warranty deed dated October 12th, 1867, conveyed to Lansing Kinnison, and the latter by warranty deed bearing date the 4th day of January, 1868, conveyed an undivided half to Michael Hinton. Neither of these deeds contained any exception or reservation of timber, and on their face they purported to convey the land and standing timber as well. If taken as they read they served to invest Kinnison and Hinton with the title to the land and timber as tenants in common having equal interests. Kinnison and Hinton then united in an instrument of conveyance to one Mores S. Bowen, bearing date September 22d, 1868, and which purported to be, and was in form, a warranty deed of an undivided half of the standing pine and whitewood.

The result of these dispositions, as indicated by the instruments, was that Kinnison and Hinton were equal tenants in common of the land, but that, as to the standing pine and whitewood, Kinnison, Hinton and Bowen were owners in common in the proportion of an undivided half in the latter, and an undivided quarter in each of the two former. The timber seems to have been cut by these parties or by their authority, and the plaintiffs in error claim as purchasers from and under them, and so trace their title back to the deed from defendant in error to Bradley in 1866.

There is no dispute about these respective conveyances of the land, aside from the interest in the timber. It appears, however, that on the day of the acknowledgment of the deed from the defendant in error to Bradley, that is the 21st of November, 1866, the latter gave back to Moore, the defendant in error, an instrument in writing which, besides covering these and other parcels of land, was of the tenor following: "Whereas I have this day purchased of Robert M. Moore of Allegan county, the following descriptions of land, to wit:" [The description of these and other lands then follow.] "This is to certify that all the sawing

pine and whitewood timber that is now upon the above described tracts of land belongs to the said Robert M. Moore, who is sole owner thereof; and that the said Robert M. Moore has by agreement thirty months from this date to remove the same. Dated Allegan, Nov. 21st, 1866.

WILLIAM BRADLEY."

The court below held that this instrument was of force to clothe defendant in error with the right to the timber as against Bradley and all others claiming from him with notice, subject to the qualification as to time. The plaintiffs in error maintain that it was of no force except as a bare revocable license to remove the timber, and that the subsequent unqualified grant from Bradley to Kinnison actually revoked it.

There was nothing to raise an inference that the deed from Moore to Bradley was delivered later or earlier than the time of its acknowledgment, and we must therefore assume that it was delivered at that time.—*Blanchard v. Tyler, 12 Mich., 339 ; Dresel v. Jordan, 104 Mass., 407, 417.* And as this paper given back by Bradley to Moore was of that date, referred to the deed as given on that day, was connected with the deed in sense, and as there was no evidence to separate the taking effect of the two instruments, they should be regarded as parts of a single transaction.— *Kittle v. VanDyck, 1 Sand. Ch. R., 76 ; Cunningham v. Knight, 1 Barb. S. C., 399.* And to ascertain the sense and meaning of the parties they should be read and construed together.—*Bronson v. Green, Walk. Ch. R., 56 ; Norris v. Showerman, ib., 206 ; Norris v. Hill, 1 Mich., 202 ; Dudgeon v. Haggart, 17 Mich., 275 ; Rawson v. Lampman, 1 Seld., 456 ; Clap v. Draper, 4 Mass., 266 ; Rogers v. Smith, 47 N. Y., 324; Stocking v. Fairchild, 5 Pick., 181 ; Makepeace v. Harvard College, 10 Pick., 298 ; Carpenter v. Snelling, 97 Mass., 452 ; Hills v. Miller, 3 Paige, 254 ; Cow. & H. Notes, 1420.*

It is not a matter of any vital importance that the parties may not have looked upon the disposition they were

engaged in making about the timber, as a distinct and independent operation, and did not employ precise or technical language. The material inquiry is, what construction is due to what they did, and what view ought the law to take of their actual arrangement. We must not forget the positions and relations the parties occupied, nor the nature of the business they were about, nor the character of the interests they respectively wished to secure. Bradley was to have the land in fee simple. His interest was to be something general and permanent. Moore was to have the sawing pine and whitewood so far as he should get it off in thirty months. His interest was to be exceptional and temporary. It was not strange that the parties were much less formal and particular in that part of the transaction which concerned the partial and temporary right than in that which related to the general and durable interest. But is there any doubt as to what was intended? The transaction was really single. When Moore conveyed to Bradley it was understood as part and parcel of the arrangement his conveyance was given to carry out, that this timber should then belong to Moore, but that his right to enter and take it should only continue for thirty months.

This idea is unequivocally expressed in the writing given at the same time, and intended to carry out one branch of the identical arrangement of which another branch was to be carried out by the deed. Manifestly something more was designed than a bare permission to enter in order to take timber. It was expressly declared that Moore should have property in the timber at the very time. He was then constituted "sole owner," or secured in the "sole ownership." The parties cautiously attended to this consideration as their first and leading idea in respect to this feature of the transaction. It appears to have been first in their minds and as something distinct from a right to enter, and is provided for in explicit terms. A right to enter is expressed in a subsequent clause, and is mentioned as a matter of "agreement," and as if it were a matter of second

thought.    The adoption of these separate provisions respect-
ing ownership and the right of entry, together with the
particular circumstances, most clearly denotes that it was in
the minds of the parties that Moore should hold an inter-
est, as well as a right of entry.    The written understand-
ing that he should "own" the timber was as much a part
of the principal transaction as the grant of the land, and
it found its consideration in that transaction, and it ought
to be allowed to operate as was intended, unless prevented
by some rule of law, and I am aware of no such rule.
Whether the technical effect of the arrangement was to pre-
serve to Moore the conditional right, or to transfer it to
him, is, in my judgment, a thing of no practical impor-
tance.    That it was one or the other is unquestionable,
and my brethren are inclined to regard it as substantially a
transfer or release.—*Goodtitle ex dem. Edwards v. Bailey,
_owp., 597;  Wickham v. Hawker, 7 M. & W., 63;  Row-
botham v. Wilson, 8 H. of L. Cases, 348.*    It served to secure
to Moore as against Bradley, and all others having notice,
the existing ownership of such of the timber as he should
take off in thirty months.    The arrangement was a lawful
one to fix the right in Moore, and it is not very important
to find a term which will precisely define it.

The point suggested in the brief, that the writing only
applied to severed timber, is not well taken.    If any such
limitation had been intended, it is reasonable to suppose
that some expression would have been used to indicate it.
But no such expression appears.    On the contrary, the
language is broad and general, and well adapted to denote
standing timber.    Besides, there is no evidence that any
part of the sawing pine and whitewood was severed, and yet
the writing called for "*all*" the sawing pine and whitewood
*then* upon the land.    If we defer to probabilities it is very
improbable that the *whole* had been severed; and unless it
had been, the word "all" must have been used, according
to the construction contended for, to denote a *part*, and not
*all*.    This is hardly reasonable.

The next question is whether there was any evidence for the jury that Kinnison, when he bought of Bradley, had notice of Moore's right to the timber. Upon this point the case appears to me to be clear. That there was evidence conducing to show notice to Kinnison when he got his deed and before he made any payment, seems unquestionable. The evidence relating to notice, it is true, was not harmonious, and was open to different interpretations. But it was for the jury to find how the fact was. The witness Voorhoost, who acted for Bradley in selling to Kinnison, testified that he delivered the deed in November, 1867; that he conversed with Kinnison about the timber; that he told him Moore had reserved a strip of pine; that Kinnison asked him if he knew it was on the parcel he was buying, and that he, Voorhoost, replied that he could not tell, but if there was pine on it it belonged to Robert M. Moore; that Kinnison then inquired how he could find out if Moore had pine on that land; that it was then agreed that he (Voorhoost) should write to Moore. It was further shown in evidence that Voorhoost did write to Moore and inquire as to the pine on this land, and request an answer, and that Moore, on account of some delay in getting the letter, omitted to make any reply. In a subsequent part of his examination, Voorhoost, by way of explanation, testified that it was his impression that he informed Kinnison that Robert M. Moore had reserved pine on the land sold to Bradley, and if the pine was on this land it belonged to Robert M. Moore.

Horace D. Moore testified to a conversation in December, 1867, with Kinnison and Hinton in relation to Robert M. Moore's claim to the timber. It seems that this witness had been negotiating with Kinnison and Hinton for logs from these lands, and he stated that he asked Kinnison why he did not tell him about the reservation of the timber, as it would have ended their talk about the logs; that Hinton replied that that would make no difference, as they had got a deed of the land; that Kinnison then

remarked: "Mr. Voorhoost told us that the timber was reserved, but that made no difference; we have got the deed of the land, and got it recorded first." Kinnison also testified on this subject at considerable length. His evidence differs in several particulars from that before mentioned, but it tends to show that when he bought he had notice that Moore claimed pine on some of the lands in the tract sold to Bradley, and that he took his deed subject to an open question as to whether the pine claimed by Moore was or was not on the land he was buying, and that it was to be subsequently ascertained from Moore, through correspondence opened by Voorhoost with Moore, how this was. Whether this evidence was such as should, in our opinion, have satisfied the jury, is wholly immaterial. It was sufficient to require their judgment, and it was very fairly submitted to them. I think no error was committed in this part of the case. No point is made in the brief of plaintiffs in error upon the proof of notice to other parties.

The assignment of error founded upon the supposed rejection of a question to Horace D. Moore is unsupported by the record. No such question appears to have been put to that witness. A similar question was put to another witness and rejected, but no error is assigned on this ruling.

The remaining objection to be noticed is that the court erred in charging the jury that the detention of the logs was not disputed. For the point is reduced to this by the assignment of error. Now what is the meaning of this word "detention" in reference to replevin? In *Clements v. Flight, 16 M. & W., 42,* which was an action of detinue, the word "detain," as used in that form of action, was held to mean that the defendant withheld the goods and prevented the plaintiff from having the possession of them. Nothing more, I am persuaded, would be needed to show a detention to satisfy our replevin laws.

What was the case here? William E. Sawyer, a witness for the plaintiffs in error, testified in their behalf as follows: "I sold the logs in question here, that were replev-

ied, to O. R. Johnson and Francis B. Stockbridge. I sold them for Kinnison, Hinton and Bowen. I made the bargain. Talked with O. R. Johnson and Francis B. Stockbridge at different times. I was authorized by the parties I have mentioned to make the sale. They requested me to make a sale of the logs, and to have an oversight in regard to them."

The defendant in error testified as follows: "I had a conversation with Mr. Stockbridge before this suit was brought, in regard to these logs, at his store, and with Mr. Johnson, on the road going towards Diamond Springs. Johnson spoke to me about these logs, and told me I had better go and replevy them, for he said he would not give them up unless I replevied them. He said they had made a trade with Sawyer. I had notified Mr. Stockbridge previous to this about owning the timber, and he bought it."

The record contains other matters importing that the plaintiffs in error asserted a right of property and of possession adverse to the defendant in error and inconsistent with his claim, and the record discloses nothing different. Indeed the case was tried on both sides upon the theory that the plaintiffs in error insisted upon their title and right of possession as valid and exclusive, and that they were entitled to a return, or judgment for the full value. In point of fact they actually recovered for the whitewood which was involved in the same controversy. In view of the undisputed facts, and considering the course of the trial, there was no room for saying that the plaintiffs in error did not withhold the logs and prevent the defendant in error from having the possession of them, and it was eminently proper for the court to so inform the jury and to that extent simplify their investigation.

This disposes of every material point raised by the record and noticed in the brief of plaintiffs in error, and as no error is shown the judgment should be affirmed, with costs.

The other Justices concurred.