## Wytheville.

DIME DEPOSIT AND DISCOUNT BANK OF SCRANTON, PA., v. WESCOTT AND OTHERS.

June 13, 1912.

1. CONTRACTS—*Several Papers—Identity of Subject Matter and Parties—Simultaneous Execution—Difference in Subject and Parties.*—Where two papers are executed at the same time, or simultaneously, between the same parties, in reference to the same subject matter, they must be regarded as parts of the same transaction, and receive the same construction as if their several provisions were in one and the same instrument; but this is not true where the subject matter of the two papers is different, and one of the papers is executed by some, but not all, of those who executed the other, and at a different time.

2. LANDLORD AND TENANT—*Rent—Property Removed More than Thirty Days.*—Under the statutes of this State neither a distress warrant, nor an attachment for rent, can be levied upon property which has been removed from the leased premises more than thirty days.

Appeal from a decree of the Circuit Court of Northampton county. Controversy between creditors.

*Reversed.*

This is a controversy between creditors of the Old Dominion Granite Brick Company, an insolvent corporation. The appellant claims that it has the superior lien on the proceeds of certain personal property by virtue of a *fieri facias* levied upon it prior to the levy of a distress warrant and attachment sued out by the appellees. The latter insist that their lien is superior to that of the appellant, although the levy under which they claim was later in date, because the relation of landlord and tenant existed between them and the debtor company. The appellant denies that the demand of the appellees is for rent, and insists that, if it were, the property levied on was not on the leased premises, and, so far as it ever had been, had been removed therefrom for more than thirty days prior to the levy.

The commissioner who took the account in the case reported that the property levied on was on a four-acre parcel of land, upon which the debtor company had erected its factory and other buildings, which land was not within the boundaries described in the agreement of May 14, 1906, the original lease, as claimed by the appellees; and that the sand levied on, which came from lands described in that agreement, had been removed therefrom more than thirty days before the levy.

The four acres upon which the property was when levied on is land embraced in an agreement dated February 14, 1907. These two writings, it is claimed by the appellees, must be construed together, and constitute one entire lease, and that property on lands described in either writing was liable for the rent claimed.

The agreement of May 14, 1906, is as follows:

"This agreement, made this 14th day of May, A. D. 1906, between Mary E. Wescott, Anna Cora Wescott, William H. Wescott, E. W. Custis, and Mary E. Custis, his wife, hereinafter called the vendors, of the first part, and L. M. Sturgis and John P. Butler, hereinafter called the purchasers, of the other part.

"Witnesseth: That the said vendors, in consideration of the sum of ten cents (10c.) per cubic yard, to be paid them by the said purchaser or their assigns, as hereinafter provided, and of the agreements and covenants as hereinafter contained to be done and performed on the part of the said purchaser, do, by these presents, agree to sell unto the said purchaser and their assigns all the sand being on that certain tract of land lying and being in Savage's Neck, in Northampton county, Virginia, beginning at the southwestern corner of the land of Mrs. F. G. Mapp, and running along the bay shore at ordinary high-water mark to Sandy Point, and lying between said bay shore and a certain line of marked trees on the east, with full and free liberty of entry and right of way for the said purchaser, their assigns, their servants, agents, workmen, and teams, in, through, over, and upon said premises, for the purpose of taking and removing and carrying away the said sand and manufacturing the same; the said purchaser to take not less than twelve hundred cubic yards (1,200 cubic yards) of sand per month, unless prevented by act of God or unavoidable accident from so doing. It is understood that the fee simple

title in said lands do not pass to the purchaser or their assigns under this agreement. It is further agreed, by and between the said parties, that the said purchaser shall cut no timber and shall injure no crops nor interfere with any rights of fishing and oystering now owned by said vendors. It is further agreed, by and between the said vendors and said purchaser, that the said purchaser shall have the right of ingress and egress, to and from said land, over the lands of the said vendors, for all lawful purposes, as may be designated by the said vendors, and that they, the said purchaser and their assigns, shall have the privilege of putting upon the lands of the said vendors all necessary buildings and factories which may be necessary for them to erect, in order to properly use and manufacture said sand, the points at which said buildings and factories to be erected to be designated by said vendors, and it is also agreed that said purchaser shall have the right to build along the said bay shore such wharves and boat landings as they deem necessary to properly conduct their business, and that the said vendors shall have the right and privilege to use said wharves and boat landings so built by said purchaser free of charge.

"In consideration whereof, the said purchasers do, by these presents, agree to pay unto the said vendors, their executors, administrators, or assigns, the sum of ten cents (10c.) per cubic yard of sand, without deduction, the method of estimating a cubic yard to be in such a manner as may be satisfactory to the said E. W. Custis and William H. Wescott, payment for all sand used during any month on or before the 10th day of the succeeding month. It is further agreed, by and between the aforesaid parties, that the said parties of the second part, or their assigns, shall begin taking the same on or before the 1st day of December, A. D. 1906. This contract is executed in triplicate."

In November of the same year Sturgis and Butler, parties of the second part to that agreement, assigned all their right, title, and interest in it to Brundage and Knapp, trustees, who acquired the same for the benefit of the Old Dominion Granite Brick Company (the debtor corporation), and afterwards, in April, 1908, assigned the same to that company.

In February, 1907, E. W. Custis and Mary E., his wife, two

72

of the five parties of the first part to the agreement of May 14, 1906, entered into the following agreement with the debtor company:

"This agreement, made this 14th day of February, A. D. 1907, between E. W. Custis and Mary E. Custis, his wife, of Eastville, Northampton county, Virginia, parties of the first part, and the Old Dominion Granite Brick Company, Incorporated, a corporation of the State of Virginia, party of the second part:

"Whereas, by the terms of a certain contract dated the 14th day of May, A. D. 1906, the said E. W. Custis and wife, joined by others, did agree with L. M. Sturgis and John P. Butler, giving and granting unto the said Sturgis and Butler the exclusive right to take all the sand being in and upon that certain tract of land in Savage's Neck, Northampton county, Virginia, in said contract fully described, and for the purposes and at the rates of compensation fully set forth in said contract, which said contract is duly recorded in the proper office for the recording of deeds and other documents in Northampton county, Virginia, to which reference is hereby made, and by the terms of said contract it was further agreed that the said Sturgis and Butler should have the privilege of putting upon the lands of the said Custis and wife, and others aforesaid, all necessary buildings and factories which may be necessary for them to erect and maintain, in order to properly use and manufacture said sand, the points at which said buildings should be located, erected, and maintained to be designated by said Custis and wife, and others aforesaid; also that the said Sturgis and Butler should have the right to build along the bay shore such wharves and bay landings as they might deem necessary to properly conduct their business; and whereas all the title, right, and interest of the said Sturgis and Butler in said contract has heretofore been assigned unto F. E. Brundage and H. A. Knapp, trustees for the Old Dominion Granite Brick Company, Incorporated, which said assignment has been duly recorded in the same office for recording deeds aforesaid; and whereas the said parties of the first part hereto are the owners of that portion of Savage's Neck upon which the said Old Dominion Granite Brick Company, Incorporated, desire to erect, construct, and maintain their factory and build their wharf for the shipping of

their products, and it is deemed desirable to have a modification or extension of the terms of said contract, so far as concerns the landing necessary for wharves, piers, factories, buildings, and plans of said brick company, which modification or extension has been agreed upon by the parties hereto:

"Now, therefore, in consideration of the premises and of the sum of one ($1.00) dollar, by each of the parties hereto unto the other in hand well and truly paid, the receipt whereof is hereby acknowledged, it is hereby agreed as follows—to-wit:

"First. The brick company shall have the right to build a wharf or pier at Sandy Point into Cherrystone creek, near the end of the said point, and to occupy as much land as may be necessary for that purpose, and also to extend a track or tracks, in as nearly a straight line as practicable, from this point to the sand deposit, situate about one mile in a northerly direction, and to use, occupy, and maintain said tracks, with as much land as may be necessary for the same, not to exceed ten feet in width at any point where it runs through the timber of the parties of the first part, north of field where the plant of said brick company is to be constructed, during the entire life of said contract of May 14, 1906.

"Second. The said brick company shall have the right to use and occupy for the construction and maintenance of their factory and buildings appurtenant thereto, which may be necessary in the proper conduct of their business, a piece of land as follows: Starting at an iron pin driven in the ground at the corner of the woods of the parties of the first part, as designated by said parties; thence, in an easterly direction, about two hundred and forty feet to a corner; thence, in a southerly direction, about seven hundred and fifty feet to a corner; thence, in a westerly direction, skirting a small pond, about four hundred and thirty feet to a corner; thence, in a northerly direction, to the iron pin, place of beginning, containing four acres of land *as* thereabouts.

"Third. In consideration of these additional privileges herein extended to the said brick company, it is agreed that five hundred dollars of the preferred stock in said brick company and one thousand dollars of the common stock of said brick company shall be issued unto the said Custis and wife.

"The Old Dominion Granite Brick Company doth hereby consti-

tute and appoint Henry A. Knapp to be its attorney, for it and in its name, and as for its corporate act and deed, to acknowledge this agreement before any persons having authority, under the laws of the State of Pennsylvania, to take such acknowledgment, to the intent that the same may be duly recorded.

"In witness whereof this contract has been executed by the said parties hereto on the day and year first above written."

*Kendall & Daniel, S. T. Stancell,* and *Starke, Venable & Starke,* for the appellant.

*Otho F. Mears,* for the appellees.

BUCHANAN, J. (after making the foregoing statement), delivered the opinion of the court.

If it be true, as contended by the appellant, that the property on which the distress warrant and attachment were levied was not on the premises for which the rent was claimed to be due, and had been removed therefrom for more than thirty days prior to the levy, then it is wholly immaterial whether the relation of landlord and tenant existed between the appellees and the debtor company, for, even if such relation did exist, the appellant's claim would be superior to that of the appellees.

It is clear, we think, that the agreements of May, 1906, and February, 1907, cannot be considered as constituting one contract. While the latter recites, in substance, the provisions of the former writing, and states that the brick company desires to erect its factory and build its wharf on property owned by Custis and · wife, and that it is deemed desirable to have a modification or extension of the terms of the agreement of May, 1906, "so far as concerns the landing necessary for wharves, piers, factories, buildings, and plans" of the brick company, the parties to the two agreements are different and the subject matter is not the same. There were five persons parties of the first part to the agreement of May, 1906. Of these only two were parties to the agreement of February, 1907. The four acres of land which the brick company acquired the right to use and occupy for the construction of

its plant by the latter agreement were not within the boundaries described in the agreement of May, 1906. The consideration paid for it was stock in the brick company, issued to the two parties of the first part in the February agreement, and not to the five persons who were parties of the first part in the May agreement.

Where two papers are executed at the same time, or simultaneously, between the same parties, in reference to the same subject matter, they must be regarded as parts of the same transaction, and receive the same construction as if their several provisions were in one and the same instrument. *Portsmouth Refining Co.* v. *Oliver Refining Co.*, 109 Va. 513, 520, 64 S. E. 56, 132 Am. St. Rep. 924, and authorities cited; *Nye* v. *Lovitt*, 92 Va. 710, 714, 24 S. E. 345. But we know of no rule of law that would authorize or justify the court in construing as one instrument two writings executed under the circumstances disclosed by this record.

The rent or royalty, for the collection of which the distress warrant and attachment were sued out, was due or to become due under the agreement of May, 1906, was payable jointly to all five of the persons who were parties of the first part to that agreement, and the said proceedings for its collection were in the name of and for the benefit of all of them. The property levied on under the distress warrant and attachment not being on the premises described in that agreement (the leased premises, if the agreement were a lease—as to which we express no opinion), and none of it having been on said premises for more than thirty days prior to the levy, it was not subject to such levy; for there is no authority for levying either a distress warrant or an attachment for rent upon property which has been removed from the leased premises more than thirty days. Code, sec. 2791, 2962.

It follows from what has been said that we are of opinion that the circuit court erred in holding that the lien of the appellant was inferior to the claim of the appellees, and that its decree so holding must be reversed, and this court will remand the cause to the circuit court for further proceedings in accord with the views expressed in this opinion.

*Reversed.*