# Richmond

RICHMOND POSTAL CREDIT UNION, INC. v. JAMES T.
BOOKER, AND OTHERS.

March 10, 1938.

Present, All the Justices.

The opinion states the case.

*John W. Fussell* and *George W. Reilly*, for the plaintiff in error.

*S. W. Robinson, Jr.*, and *J. C. Robertson*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

James A. Brown, a letter carrier in the Richmond Post Office Division, in order to pay off certain of his creditors, applied to the Richmond Postal Credit Union, Inc., plaintiff in this case, for a loan.. He secured a blank form note and application for the loan, which were required by the Union, and filled them out. The note was made in the sum of $1,000 and payable in twenty monthly instalments of $50 each, plus one per cent interest per month. He then presented the note and application to the defendants, four fellow letter carriers, for their endorsements. They endorsed the note after seeing the provision in the application under the heading "Remarks" which read as follows: "This loan is to pay up small loans and straighten me out financially. Monthly check to be held by Mr. Quinn, and Charles Storrs for payment. The same has been discussed with Mr. Williams, P. M." The uncontradicted testimony of each of the defendants is to the effect that they would not have obligated themselves as endorsers on the note if the above provision had not been in the application. The effect of this notation was that Brown agreed for Quinn, who was treasurer of the plaintiff company and also bookkeeper and

later assistant cashier of the Richmond Post Office, to hold the checks and that he (Brown) would have them cashed at the Post Office each month and turn over to Quinn $50. Quinn failed to hold the checks as agreed and from time to time extended the time of payment of the note without the consent of the endorsers.

The loan was made in January, 1932. Small payments had been made thereon and in August, 1933, there was a balance due on the note plus interest of $671.50. In September, 1933, James A. Brown resigned his position with the Post Office Department and left the State, and has made no further payments on the note. The Richmond Postal Credit Union made demand upon all the defendant endorsers for the sum of $671.50, the amount due upon the note with interest. They refused to pay this amount but said they were willing to pay the nineteenth and twentieth instalments of $50 each with interest. It was shown by the evidence that if the provision in the application had been carried out, eighteen instalments would have been paid before Brown resigned from the Post Office Department and left the State. Plaintiffs brought suit against the defendant endorsers of the note for the full amount due. The lower court held that the breach of the provision in the application, whereby the plaintiff had agreed to hold Brown's checks, released the endorsers to the extent of the payments that were thus allowed to be in default. This included all except the last two payments of $50 each and for that amount the court gave judgment.

The plaintiff makes two assignments of error to the judgment of the lower court. The first is, "The admission over plaintiff's objection as evidence of a certain document known as an 'application for loan' bearing certain notations thereon, and oral testimony offered in connection with and supporting and enlarging upon said written notations contained thereon."

There is no merit in this assignment. The application and the note were each a part of the other and simultaneously made and delivered. They must be con-

sidered together as the contract. This does not impinge on the parol evidence rule because the contemporaneous writing neither varied nor contradicted the note.

In 8 Corpus Juris, Bills and Notes, section 327, it is said: "It is elementary that, when separate writings are executed between the same parties at the same time, in the course and as parts of the same transaction, and intended to accomplish the same general object, they are to be construed as one and the same instrument. In accordance with this principle, notes and contemporaneous written agreements executed as part of the same transaction will be construed together as forming one contract * * * ."

And in 8 American Jurisprudence, Bills and Notes, section 1118, it is said: "A negotiable instrument may be modified by a contemporaneous written agreement. (Citing the case of *Davis* v. *Brown*, 94 U. S. 423, 24 L. Ed. 204). This rule applies to indorsements. A promissory note may be rendered conditional as between the parties, or others having notice, by the provisions of a contemporaneous written instrument."

In the case of *Luck* v. *Wood*, 144 Va. 355, 132 S. E. 178, Chief Justice Prentis quotes Judge Buchanan in *Portsmouth Cotton Oil Refining Corp.* v. *Oliver Refining Company*, 109 Va. 513, 64 S. E. 56, 132 Am. St. Rep. 924, and says:

" 'Where two papers are executed at the same time, or contemporaneously between the same parties in reference to the same subject matter, they must be regarded as parts of one transaction and receive the same construction as if their several provisions were in one and the same instrument. See *Harvey* v. *Anderson* (*Anderson* v. *Harvey's Heirs*), 10 Gratt. (51 Va.) 386; *Torrence* v. *Shedd*, 112 Ill. 466, 467; *Johnson* v. *Moore*, 28 Mich. 3; and cases cited in notes to 13 Cyc. 614.'

"This rule has been since repeated by this court in *Dime Deposit Bank* v. *Wescott*, 113 Va. [567] 573, 75 S. E. 179, and assumed in *Geoghegan* v. *Arbuckle Bros.*, 139 Va. [92] 100, 123 S. E. 387, 36 A. L. R. 399; *Oliver Typewriter Co.* v. *Huffman*, 65 W. Va. [51] 56, 63 S. E. 1086. This hold-

ing does not in the slightest degree impinge upon the parol evidence rule. Such evidence neither tends to contradict nor to vary the terms of the contract. It simply admits evidence of the entire contract in all of its several parts, as finally concluded, in order to determine the rights of the parties thereunder."

The case of *Sale* v. *Figg,* 164 Va. 402, 180 S. E. 173, involved a sale of real estate in which the defendant (seller) orally agreed, at the time the contract of sale was executed, to correct certain defects in the building on the land and to furnish a policy of title insurance. Neither the contract of sale nor the deed mentioned this agreement and the plaintiff called defendant's attention to this fact. The defendant, thereupon, assured him that this was all right, that these promises were a separate matter and he would see that they were carried out. Justice Eggleston speaking for the court applied the rule as expressed in *Luck* v. *Wood, supra,* and held that the oral agreements were properly admitted in evidence as a part of the consideration and inducement for the purchase of the property; that they were a part of the contract and, therefore, the parol evidence rule did not apply.

Reliance is placed in *Barrett* v. *Vaughan & Co.,* 163 Va. 811, 178 S. E. 64. There we held that where an endorser of a note agrees to be bound as a maker he thereby becomes primarily liable and the extension of time of payment by the holder does not release him. He was not permitted to show an alleged oral agreement between himself and the payee, to the effect that he was not to be liable on the note until all rights and remedies against the makers had been exhausted, because he had assumed the contract of a maker. The principles applied there have no application in the case at bar. The defendants here were sued as endorsers and not as makers.

In *Crafts* v. *Broadway Nat. Bank,* 142 Va. 702, 128 S. E. 364, we likewise approved the trial court's ruling in refusing to permit the endorser of a note which was regular on its face, complete in its terms and admittedly delivered to

the bank, to prove an alleged agreement made at the time the note was delivered to the effect that it was not to be enforced at maturity against him but was only to be enforced against him after certain collateral had been collected by the bank and the proceeds thereof applied to the payment of the note. This evidence of such an oral agreement would have clearly violated the parol evidence rule.

In *Conway* v. *American National Bank,* 146 Va. 357, 131 S. E. 803, this court reiterated the rule that an endorser of a note is not allowed to show that he had a side agreement with the payee that certain real estate was to be subjected and the proceeds applied, before collection of the note would be enforced against him.

The rule applied in those cases is well established but it has no application in the case at bar. Here the agreement in the application and the note constituted the contract. The stipulation that the checks were to be held by Quinn was an important and integral part of the contract. It concerned the same subject matter, neither varied nor contradicted the note and was part of the inducement for its creation.

The plaintiff next contends that, even though the parol evidence rule is not applicable and the note and application form the contract, a United States statute entitled "Assignments of Claims Void," would apply to the notation in the application and render the agreement void. This statute, section 3477 of U. S. R. S., as amended by 35 Stat. 411, U. S. C. A., Title 31, section 203, reads as follows:

"All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, except as provided in section 204 of this title, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the pay-

ment thereof. Such transfers, assignments, and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same. The provisions of this section shall not apply to payments for rent of post-office quarters made by postmasters to duly authorized agents of the lessors." (R. S. section 3477, as amended by Act May 27, 1908, ch. 206, 35 Stat. 411, 31 U. S. C. A., section 203).

■ The burden of showing that this transaction comes within the prohibition of the statute was upon the plaintiff. He invokes the penalty of the statute and unless the facts here bring the case clearly within its nullifying provisions it has no application.

■ The statute provides that "all transfers and assignments made of any claim upon the United States * * * shall be absolutely null and void, unless * * * ." The very nature and purpose of the act was to protect the Federal Government. It was not to protect or penalize a claimant, nor was its purpose to regulate the business transactions between private persons. This is clearly shown from the extended annotation to the section. It must be interpreted in the light of its purpose to protect the Government.

■ The agreement set forth in the application was neither a "transfer" nor an "assignment" of "any claim" against the Federal Government. Brown simply agreed with the plaintiff that his monthly checks should be held by Quinn and Storrs for the monthly payments on the note. Quinn testified that it was agreed that Brown would come to the post office and endorse the checks which would then be cashed and the $50 payments made. If the Government's obligation to pay Brown his monthly wages in return for his service to the postal department ever was a claim against the Government, it certainly ceased to be such when the

obligation was settled by the delivery of the pay checks to Brown or to his agent, Quinn. The checks were never transferred or assigned by Brown to anyone. The plaintiff, by virtue of the stipulation in the application, has never had a claim against the Government. It was not a transferee or assignee of any claim that could have been asserted against the Government successfully. The Government owed it no money.

The plaintiff's agent, Quinn, testified that he knew, at the time the loan was made, that it was in contravention of the statute and illegal for anyone to assign or transfer a claim against the Government unless the required formalities were complied with. It will not be assumed that with this knowledge he wilfully violated the law and received from Brown an assignment of a claim against the Government. He surely would not have required or received the stipulation in the application if he had known that it violated the statute. Quinn, acting for the plaintiff, did actually hold Brown's salary checks for several months and after they were cashed he collected the agreed payments.

The controversy here, as we have indicated, is between the credit union, the plaintiff, and the endorsers on the note. Neither Brown, the maker of the note, nor the Government, is objecting to the arrangement that was made.

What is a "claim" against the United States? This question is directly and clearly answered in *Hobbs* v. *McLean*, 117 U. S. 567, 6 S. Ct. 870, 873, 29 L. Ed. 940, in this language: "It is a right to demand money from the United States." Again in that case this is said: "Section 3477" (which is the statute involved here), "it is clear, only refers to claims against the United States which can be presented by the claimant to some department or officer of the United States for payment, or may be prosecuted in the court of claims. The section simply forbids the assignment of such claims before their allowance, the ascertainment of the amount due thereon, and the issue of a warrant for their payment."

In *Martin* v. *National Surety Co.,* 300 U. S. 588, 57 S. Ct. 531, 534, 81 L. Ed. 822, it is held that, "The provisions of the statute making void an assignment or power of attorney by a Government contractor are for the protection of the Government. *Hobbs* v. *McLean,* 117 U. S. 567, 576, 6 S. Ct. 870, 29 L. Ed. 940 [943]; *McGowan* v. *Parish,* 237 U. S. 285, 294, 295, 35 S. Ct. 543, 59 L. Ed. 955 [961, 962]. In the absence of such a rule, the Government would be in danger of becoming embroiled in conflicting claims, with delay and embarrassment and the chance of multiple liability."

We are of opinion that the judgment must be affirmed.

*Affirmed.*