PRESENT:  All the Justices

VIRGINIA HOUSING DEVELOPMENT AUTHORITY

v.  Record No. 970924

FOX RUN LIMITED PARTNERSHIP

OPINION BY
JUSTICE LAWRENCE L. KOONTZ, JR.
February 27, 1998

STUART A. SIMON, TRUSTEE

v.  Record No. 970946

FOX RUN LIMITED PARTNERSHIP


FROM THE CIRCUIT COURT OF ROANOKE COUNTY
Kenneth E. Trabue, Judge

These two appeals arise from a foreclosure sale of a multi-family housing project.  In the first appeal, we consider whether the noteholder and purchaser at that sale is entitled to collect the "prepayment fee" provided for by the terms of the notes secured by the deed of trust.  The second issue we consider, raised in both appeals, is whether the advertisement of the foreclosure sale by the trustee adequately disclosed that certain personal property, also encumbered by the deed of trust, was to be sold along with the real property.

BACKGROUND

The parties do not dispute the principal facts.  On November 23, 1987, the Virginia Housing Development Authority (VHDA) made a loan, evidenced by three notes in the total amount

of $11,737,000, to Fox Run Limited Partnership (Fox Run) to finance the acquisition of land and the construction thereon of a 274-unit multi-family housing project in Prince William County. Additionally, the acquisition of certain items of personalty, generally consisting of appliances for individual units, was also financed by the loan.

The three notes, secured by a single deed of trust, are identical in their terms. Relevant to this appeal, each note provides as follows:

> D. Upon failure of [Fox Run] to perform or comply with any of the terms or conditions of this Note or upon the occurrence of any event of default under the Deed of Trust hereafter described securing this Note, the entire unpaid principal hereof, together with all accrued interest thereon, shall, at the option of [VHDA], become at once due and payable (and no failure by [VHDA] to exercise such option shall be deemed or construed as a waiver of the right to exercise the same in the event of any subsequent or continuing default or breach).
>
> . . . .
>
> F. . . . In the event that [VHDA] shall exercise its right under Section D hereinabove . . ., a prepayment fee shall, at the option of [VHDA], become at once due and payable . . . . Any prepayment fee which shall become due and payable under this Section F shall be secured by the Deed of Trust . . . .[1]

---

[1]This section provides for alternate calculations to determine the amount of the prepayment fee. However, for purposes of this appeal the parties agree that the fee is six percent of the outstanding balance of the loan, which amounts to $698,104.59.

2

In addition to the real property, the deed of trust describes the property encumbered thereby as "equipment and fixtures . . . and all items of personal property . . . now or hereafter used on or in connection with the Development." (Emphasis added.) It further provides that "[t]he Secured Indebtednesses consist of . . . [a]ll obligations under three certain deed of trust notes of even date . . . [and] [a]ll other indebtednesses of [Fox Run] to [VHDA]." (Emphasis added.)

The deed of trust provides that upon default, as defined therein, acceleration of "all of the Secured Indebtednesses shall, at the option of [VHDA], become at once due and payable" and provides for the sale of all secured property by the trustee to satisfy the debt. The deed of trust also contains waivers of delay and notice:

> No delay by [VHDA] or the Trustees in exercising any right or remedy hereunder or otherwise afforded by law shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any default hereunder.
>
> . . . .
>
> Unless required by law, notice of the exercise of any option granted to [VHDA] herein need not be given, and [Fox Run] hereby waives, to the extent permitted by law, any notice of the election of [VHDA] to exercise any such option.

On December 4, 1991, following default by Fox Run on the notes, VHDA gave notice by letter to Fox Run of its election to exercise its right of acceleration under the notes and the deed

of trust, declaring the entire principal, accrued interest and late charges to be immediately due and payable. While not addressing the prepayment fee, VHDA expressly reserved its right to "any remedies . . . at law [or] in equity, under the Notes [and] the Deed of Trust."

Fox Run filed a bankruptcy petition on December 10, 1991, staying any effort at foreclosure by VHDA. On November 6, 1992, the bankruptcy court terminated the automatic stay, and, on December 10, 1992, VHDA again informed Fox Run that it had exercised its option to accelerate the debt. Again, there was no express mention of the prepayment fee in this notice, but the same reservation of remedies was made.

Fox Run and VHDA entered into negotiations in an effort to restructure the loan and cure the default. When the negotiations failed, VHDA directed Stuart A. Simon, the substitute trustee under the deed of trust (the trustee), to institute foreclosure proceedings. The trustee notified Fox Run on May 26, 1993 that the foreclosure sale would be held on June 18, 1993. The published advertisement of the sale stated that the trustee would "offer for sale . . . all of the property with any improvements thereon . . . . Reference is made to the . . . Deed of Trust for a more particular description." The notice further provided that "[t]he Real Property shall be

4

conveyed by special warranty deed <u>and the Personal Property shall be conveyed by Bill of Sale</u>." (Emphasis added.)

Fox Run then began considering the possibility of paying off the loan or of bidding on the property at the foreclosure sale, and requested that VHDA supply it with the payoff terms. In response to this request, VHDA calculated the balance due on the notes to be $13,576,596.85, including a 6% prepayment fee of $698,104.59. These figures, setting out the amount of the principal, interest, late charges, legal fees and the prepayment fee in express terms, were communicated to Fox Run by letter on June 11, 1993.

By letter dated June 16, 1993 and delivered via telefacsimile, Fox Run notified VHDA of the "contingency" that Fox Run might submit a bid at the foreclosure sale, and asked VHDA to confirm that "[n]o prepayment penalty will be required by the foreclosure." Fox Run further asked VHDA to confirm "[t]he amount required by VHDA to discharge its indebtedness in full," setting out the amount of principal and interest, but excluding the prepayment fee, late charges, and legal fees which had been previously supplied by VHDA.

On the same day, VHDA responded to Fox Run. It confirmed the amount of principal and interest owed, and expressly noted that late charges, legal fees, and costs incident to the sale had not been included in Fox Run's inquiry, referring Fox Run to

5

the June 11, 1993 letter. With respect to the prepayment fee, VHDA stated "[t]he deed of trust notes representing the outstanding debt clearly provide that a prepayment [fee] may be required upon acceleration by [VHDA]. However, this is not to say that [VHDA] will necessarily include, in any bid it may put forward, all or any part of the prepayment [fee]."

VHDA, in expectation that Fox Run would have funds available in its reserve accounts to pay a possible deficiency resulting from foreclosure, initially prepared its foreclosure bid without including the full prepayment fee. However, after reviewing this bid on the morning of the sale, VHDA decided to increase its bid to include the full amount it had calculated was due, including the prepayment fee. VHDA was the sole bidder at the foreclosure sale, submitting a bid of $13,670,000, the amount VHDA had calculated was the whole indebtedness including the prepayment fee.[2]

On August 16, 1993, Fox Run informed VHDA that it claimed ownership of certain "personal property remaining on the premises, including appliances and other items," and submitted

_____

[2]The parties do not dispute that VHDA failed to consider certain credits due Fox Run for its reserve accounts or that there was a slight deficiency between VHDA's bid and the actual amount due under VHDA's calculations. Accordingly, following the sale VHDA determined that Fox Run was due $110,136.85 from the sale after all debts and fees were satisfied, and paid that sum to Fox Run.

an inventory of those items.[3] On August 25, 1993, VHDA responded that the personal property "was transferred [to VHDA] by the trustee as part of the trustee's sale." After Fox Run disputed VHDA's ownership of the personal property located on the premises, VHDA provided Fox Run with a copy of the bill of sale which transferred to VHDA "all right title and interest to the personal property."

On August 27, 1993, Fox Run filed a motion for declaratory judgment against VHDA and the trustee asserting that VHDA is not entitled to the prepayment fee because VHDA "has not properly exercised its option to impose a prepayment [fee] or done so in a timely manner." Thus, the pleading asserts that the sale price of the property at foreclosure exceeded the indebtedness secured by the lien of the deed of trust by the amount of the prepayment fee. Continuing, the pleading further asserts that the trustee had not "properly sold" the personal property belonging to Fox Run. Accordingly, Fox Run sought a declaratory judgment that VHDA is not entitled to the prepayment fee, creating an excess from the foreclosure sale in that amount in

---

[3]The personal property consisted generally of appliances such as stoves, refrigerators, washers, and dryers used in the individual apartments. The parties do not dispute that certain other appliances used at Fox Run were the property of Fralin & Waldron, the developer that had formed the Fox Run Partnership. Fralin & Waldron was permitted to remove its appliances following the foreclosure sale.

Fox Run's favor, and that title to the personal property remains vested in Fox Run.[4]

VHDA and the trustee responded to the suit with general denials. Extensive discovery proceedings followed, with agents and employees of the parties being deposed.

Nina B. Nolley, a VHDA employee, testified at her deposition that the prepayment fee had not been calculated until Fox Run requested payoff figures on June 9, 1993. She further testified, however, that the prepayment fee "always existed in the [loan] documents," and that she always included prepayment fees in her loan calculations if one was provided for in the loan documents. Nolley testified that in every instance that she could recall, VHDA assessed a prepayment fee for any payoff that was subject to such a fee.

J. Judson McKellar, Jr., General Counsel for VHDA, and Paul M. Brennan, Senior Counsel for VHDA, both testified that following Fox Run's request for payoff figures, McKellar, whose responsibilities at VHDA included such matters, determined that the prepayment fee would be included as part of Fox Run's debt. According to McKellar, the decision to impose the prepayment fee was "a group decision . . . involv[ing] Hunter Jacobs [Deputy

---

[4]A further claim concerning pre-foreclosure rents was settled by the parties and is not a part of this appeal.

Director of Housing Management], Paul Brennan, myself . . . Nina Nolley . . . [and] . . . later . . . Conrad Sterrett."

Sterrett, the Director of Finance for VHDA, actually prepared VHDA's foreclosure bid. He testified that in discussing the matter within VHDA, the prepayment fee "was owed us and therefore should be included in the maximum amount owed us." This, Sterrett testified, was the "[g]eneral philosophy of the finance division" of the VHDA.

The parties submitted the case to the chancellor on the depositions, stipulations of fact, and cross-motions for summary judgment. Following review of the evidence and upon written and oral argument of the parties, the chancellor issued a letter opinion. In that opinion, the chancellor found that "the evidence fails to establish that prior to foreclosure at auction that VHDA or anyone with the authority to do so . . . [made] an election to impose [the prepayment fee]." The chancellor further found that "[t]he Trustee did not advertise that any personal property of Fox Run located on the premises was to be subject to the foreclosure sale. . . . [N]o one (neither the parties nor interested outside bidders) had a clue from the newspaper advertisement as to what freestanding appliances or personalty in the apartment units was owned by Fox Run." Based upon these findings, the chancellor granted summary judgment for Fox Run, awarding it $698,104.59 as the excess of the

9

foreclosure sale proceeds without the prepayment fee and
$113,921.28 for the conversion of the personal property.  We
awarded appeals to both VHDA and the trustee.[5]

DISCUSSION

VHDA contends that the chancellor erred in finding that
prior to foreclosure it had not made an election to impose the
prepayment fee.  We agree.  The evidence showed that McKellar,
an officer of VHDA authorized to make such determinations, in
consultation with other officers and employees made the election
to exercise VHDA's option to assess the prepayment fee as part
of "the maximum amount owed" by Fox Run, and not merely as a
condition of avoiding foreclosure by prepayment.[6]  Following that
determination, Nolley calculated the exact amount of the
prepayment fee and this figure was communicated to Fox Run in

---

[5]We also accepted assignments of cross-error by Fox Run
related to rulings by the chancellor on its claim for pre-
judgment interest.  Our resolution of the main issues of these
appeals renders the assignments of cross-error moot.

[6]Since the notes precluded Fox Run from making payoff prior
to ten years and four months after the first unit was rented,
VHDA further contends that its election to assess the prepayment
fee was clearly applicable to the debt to be collected by
foreclosure.  While the notes contain this limitation, it is
apparent from the record that VHDA and Fox Run had entered into
negotiations to restructure or compromise the debt after default
and that the amount of the prepayment fee could have been
included in such a negotiated payoff.

10

the June 11, 1993 letter.[7]  At that time, VHDA clearly had elected to exercise its option to assess the fee as part of Fox Run's debt prior to foreclosure.

The fact that VHDA subsequently advised Fox Run that VHDA's foreclosure bid might not include the prepayment fee, and that VHDA initially had determined that it would include only a portion of the fee in its bid, is not relevant.  VHDA was under no obligation to bid the full amount of the debt at the foreclosure sale, especially if, in its estimation, the debtor had assets that could satisfy any deficit remaining after the sale.

However, the determination that VHDA had elected to exercise its option to assess the prepayment fee does not resolve the dispositive issue presented by this appeal.  This is so because that determination leaves unanswered the contention of Fox Run, as originally asserted in the motion for declaratory judgment, that VHDA's election was not "properly exercised . . . or done so in a timely manner."  Therefore, we will assume that the chancellor's ruling contemplated that VHDA had not

---

[7]Fox Run concedes that the June 11, 1993 letter placed it on notice that VHDA would impose the prepayment fee as a condition or penalty of Fox Run's paying off the debt to avoid foreclosure.  For purposes of this opinion, we will assume without deciding that neither VHDA's June 11, 1993 letter, nor its June 16, 1993 letter, was adequate notice of VHDA's intent to assess the prepayment penalty as a cost of foreclosure.

properly exercised its election because it had not notified Fox Run of that election with respect to foreclosure.  Thus, we must consider what duty, if any, VHDA owed under the notes or the deed of trust to give Fox Run notice of VHDA's intent to assess the prepayment fee as part of the debt to be collected by foreclosure.

We begin by noting that deeds of trust and their underlying notes are "separate and distinct" documents.  Jim Carpenter Company v. Potts, 255 Va. 147, 156 n.5, ___ S.E.2d ___, ___ n.5 (1998).  However, in appropriate circumstances, we have recognized that "notes and contemporaneous written agreements executed as part of the same transaction will be construed together as forming one contract."  Richmond Postal Credit Union v. Booker, 170 Va. 129, 134, 195 S.E. 663, 665 (1938)(citation omitted).  So long as neither document varies or contradicts the terms of the other, terms of one document which clearly contemplate the application of terms in the other may be viewed together as representing the complete agreement of the parties. Id.  Such is the case with respect to the notes and deed of trust at issue here, and, accordingly, we will construe these documents as representing one contract.

Nothing contained within the express language of the notes or the deed of trust requires VHDA to provide notice to Fox Run of its election to impose the prepayment fee at foreclosure.

Fox Run contends, however, that in order for VHDA to exercise its option to assess the prepayment fee as part of the debt to be collected at foreclosure, that election must have been included in the notices of acceleration or given within a reasonable time thereafter.[8]  Relying, in part, upon our decision in Florence v. Friedlander, 209 Va. 520, 523, 165 S.E.2d 388, 391 (1969), Fox Run correctly points out that a notice of acceleration must be clear and unequivocal that the creditor is exercising its option to accelerate.  Thus, under the circumstances of the present case, Fox Run asserts that VHDA was required, but failed, to give Fox Run notice in clear and unequivocal terms in the notice of acceleration that the fee would be imposed at foreclosure.  We disagree.

While it is true that the notes and the deed of trust expressly provide for the prepayment fee to be included in the indebtedness secured by the deed of trust, this does not make the prepayment fee a part of the principal and interest subject

---

[8]With respect to the question of timeliness, Fox Run asserts that VHDA's actions should be judged from the time of the first notice of acceleration immediately prior to Fox Run's filing of its bankruptcy petition in 1991.  We disagree.  Having filed for bankruptcy and received the benefit of the automatic stay imposed on the foreclosure action, Fox Run cannot now assert VHDA was nonetheless required to continue actively to pursue the foreclosure during that stay, other than through the normal procedures of the bankruptcy court.  Moreover, our resolution of the notice issue renders any issue of timeliness moot.

to notice of acceleration.  To the contrary, it is clear that acceleration of the principal debt is a condition precedent to VHDA's ability to exercise its option to assess the prepayment fee following a default.  Accordingly, we hold that VHDA was not required to include notice of its election to assess the prepayment fee as a part of the debt owed upon notice of acceleration of the principal debt.

We are left to consider then whether notice of VHDA's election to assess the prepayment fee as part of the debt to be collected at foreclosure was an independent requirement fairly implied in the contract represented by the notes and the deed of trust.  The deed of trust contains express provisions for waiver of "notice of any option granted [VHDA] herein" and that "[n]o delay by [VHDA] in exercising any right or remedy hereunder . . . shall operate as a waiver thereof or preclude the exercise thereof."  Fox Run asserts that the use of the terms "herein" and "hereunder" limits the application of these two provisions to options exercised under the deed of trust, and, thus, implicitly requires timely notice for options exercised under the notes.  We disagree.

As we have noted above, the notes and the deed of trust represent a single contract.  Since there is no express provision within the notes requiring notice of VHDA's election to assess the prepayment fee, the waiver and delay provisions of

14

the deed of trust may be applied to the notes without varying or contradicting any terms therein. Richmond Postal Credit Union, 170 Va. at 134, 195 S.E. at 665. Thus, we hold that Fox Run waived the right to notice of VHDA's election to assess the fee as part of the debt to be collected at foreclosure.

We now turn to the issue of the adequacy of the trustee's advertisement of sale with regard to the personal property. Code § 55-59.3 provides the required contents for an advertisement of a sale under a deed of trust:

> The advertisement of sale under any deed of trust, in addition to such other matters as may be required by such deed of trust or by the trustee, in his discretion, shall set forth a description of the property to be sold, which description need not be as extensive as that contained in the deed of trust, and shall identify the property by street address, if any, or, if none, shall give the general location of the property with reference to streets, routes, or known landmarks. Where available, tax map identification may be used but is not required. The advertisement shall also include the time, place and terms of sale and shall give the name or names of the trustee or trustees. It shall set forth the name, address and telephone number of such person (either a trustee or the party secured or his agent or attorney) as may be able to respond to inquiries concerning the sale.

We have not previously addressed the application of this statute. Fox Run relies upon our decision in Deep v. Rose, 234 Va. 631, 636, 364 S.E.2d 228, 231 (1988), wherein we held that the time periods for advertising foreclosure sales contained in Code § 55-59.2 are mandatory. Relying on this holding, Fox Run

15

asserts that the same principle should apply to the content of the advertisement. We disagree.

In Deep v. Rose, we expressly stated that our holding was limited to the effect of Code § 55-59.2. 234 Va. at 638, 364 S.E.2d at 232. In other matters concerning advertisement of foreclosure sales under deeds of trust, we have held that substantial compliance is sufficient so long as the rights of the parties are not affected in any material way. See, e.g., Bailey v. Pioneer Federal Savings and Loan Association, 210 Va. 558, 562-63, 172 S.E.2d 730, 734 (1970).

Here, the notes and deed of trust clearly make reference to the real and personal property as the collateral for the loan. The advertisement refers to the deed of trust for a description of the property to be sold and expressly states that the personal property will be conveyed by bill of sale. This was adequate notice to Fox Run, and to any potential third-party bidder, that the personal property "used on or in connection with" Fox Run's housing project would be sold as part of the foreclosure. Accordingly, we hold that the trustee's advertisement of the sale substantially complied with the requirements of Code § 55-59.3.

For these reasons, we will reverse the judgment of the chancellor and enter final judgment for VHDA and the trustee.

Reversed and final judgment.

16