Mr. Justice MacArthur
delivered the opinion of the court:
The question discussed so earnestly in this case is, whether a landlord who has been made a defendant to a creditor’s bill in a court of chancery, and who has answered such bill asserting his lien and requesting payment of the amount of rent due, can thereby acquire a precedence over deeds of trust executed by the tenant upon his goods and chattels situated on the premises, without having taken any steps prescribed by the statute for enforcing his tacit lien. On this proposition we have come to the same conclusion as that reached by the special auditor. His views upon this branch of the case are so clearly expressed and so well sustained by legal principles that we adopt them, without hesitation, as disposing of the main point in controversy. He says:
*436 “Has Mr. Gulick,under the circumstances above set forth, a preferred lien upon the fund arising from the sale of the goods and chattels contained in the Congressional Hotel, and if so, for what period of time, are perhaps the most important questions embraced in the present reference. On his behalf it has been urged before the special auditor, that having been made a party to the bill, and having, in his answer of December 12, 1876, prayed allowance of the protection afforded by the statute for the rent then accrued as against the proceeds of any sale the court might order, and also for all rent accruing pend,ente lite previous to such sale, he is entitled to a preferred lien from the 1st day of October, 1876, when rent for the month of September became due, to the 1st day of May, 1877, about which last-mentioned date the trustee took possession under the orders of the court, as also for the month of May, rmtil the 16th day of which month the sale was in progress; that he is entitled to such .lien notwithstanding his failure to employ either of the methods of enforcing prescribed by the statute, because the bill bound the furniture from the service of process upon him, and resort to those methods would have been a contempt. The bill, however, so far as regards the defendant Gulick, having been for discovery only, neither injunction nor other relief as against him being sought, and further, the relief prayed in his answer against his co-defendants being of an affirmative character, which could be sought, if in equity at all, ' under the statutes, only by cross-bill, (Adams Eq., marg. p. 402,) the special auditor has been unable to concur in these views. He might at once, it is conceived, have proceeded to enforce his lien in the manner indicated in the statute; and to give to the course pursued by him the feffect- contended for, would place it in the power of the landlord in every similar case to utterly defeat the judgment creditor by permitting a continuing lien arising from a tenancy, which the creditor cannot terminate, to absorb the property out of which he is seeking satisfaction of his judgment. On the other hand, it has been contended, on behalf of the party *437 secured by the deed of trust, first, that as a mortgagor who has parted with his reversion could not, at common law, dis-train for rent, so, by analogy, he cannot acquire that lien which the statute has substituted for distress; and, in the second place, that the lien, being the creature of the statute, can be enforced only by a strict compliance with its provisions. The disability of the mortgagor to distrain for rent arose from the common-law doctrine that the legal estate vested in the mortgagee the right to distrain, being an incident of ownership. (Penn v. Carrie, 5 Bing., 24; Cooper's Case, 2 Wils., 375 ; Parmentor v. Webber, 2 Moore, 656.) But in equity the mortgagor remains the owner; and it seems unnecessary to ingraft upon the statutory substitute for distress the outgrowth of a doctrine which has long been, for most purposes, practically abrogated, both in equity and at law.
“ In the second place, it is doubtless true that the lien created by the statute must be enforced, if at all, in strict compliance with its provisions. But where the disposition of the property upon which the lien exists, or of the proceeds arising from its sale, has been assumed by a court of equity, does the lien need to be enforced ? It will be observed that the statutory lien differs in a material respect from its common-law prototype, the right to destrain. • Under the latter, unless distraint were actually made, the landlord acquired no lien; his was an inchoate right to a lien to be perfected by distress, rather than a lien in itself. But the lien of the statute exists independently of the prescribed methods of enforcing it. Indeed, commencing with the tenancy, it exists before those methods have been or can, be resorted to — i. e., before any rent has accrued. ‘A statutory lien implies security upon the thing before the warrant to seize it is levied. It ties itself to the property from the time it attaches to it, and the levy and sale of the property are only the means of enforcing it.’ In other words, if the lieu is given by the statute, proceedings are not necessary to fix the status of the property. (Morgan v. Campbell, 22 Wall., 381; see, also, Grant v. Whitewell, 9 *438 Iowa, 153; Carpenter v. Gillespie, 10 Id., 592; Doane v. Garrettson, 24 Id., 355.) These Iowa decisions are upon a statute substantially the same as the statute in force in this District.
“ If, then, at any time during the tenancy of the Congressional Hotel by the defendant Sanderson, or within three months after rent therefor was due, any personal chattels of said defendant, subject to execution for debt, came into the possession of a court of equity or its officer, they came into such possession subject to the lien created by the statute in favor of the landlord, or, in the language of the Supreme Court of the United States in Morgan v. Campbell, supra, with the lien ‘tied to the property.’ Such a lien existing by mere force of the statute, requiring no act upon the part of the landlord to perfect it, a court of equity would, in the opinion of the special auditor, regard under such circumstances without resort by the landlord to means of enforcement. ‘Inasmuch as the lien had actually attached to the goods, and could have been enforced against them in defendant’s’ [a mortgagee in possession] ‘hands, he had the right — in fact, it ivas his duty— to discharge it out of the proceeds of the goods.’ (Doane v. Garrettson, 24 Iowa, 153.)
“ If the above view be correct, the only inquiry upon this branch of the subject remaining is, when did the chattels come into the possession of the court or its officers ?
“Two orders looking to the sale of the goods pendente lite were passed by the court, one on the 23d day of March, and one on the 19th day of April, 1877. The first merely granted to the trustee, under the deeds of trust, leave to execute the same, differing little, if at all, in effect from the order of February 21, discharging the restraining order of November 15, 1876. The second was mandatory in its character, requiring the trustee to sell forthwith and bring the proceeds into court, subject to its further order. The latter may properly be considered such a taking of the possession or custody of the goods as would have rendered it a contempt in any party to the suit to have interfered with the execution of the order, or with the possession of the trustee thereunder. The special *439 auditor has therefore allowed Gulick a preferred hen upon the fund arising from the sale of the chattels in the Congressional Hotel building for the rent accrued within three months immediately preceding the date of said order, and also by analogy to the decision of the court in Joyce v. Wilkenning, 1 MacArthur, 567, for the month current when said order was passed.
“ The only question presented in the claims of the landlord remaining to be considered is, whether or not rent, either for the entire month of May, or for the pprtion of that month during which the goods remained upon the premises in possession of the trustee, is payable out of the proceeds of their sale. Right to such payment could rest upon one of two hypotheses only, viz., either that the goods, notwithstanding their seizure under the order of the court, still remained so far the property of the tenant as to be liable for the indebtedness on account of rent incurred by him subsequent thereto, or else that the goods having been permitted to remain upon the premises until another month of the tenancy had been' fairly entered upon, the rent for that month, or at least for the portion of it during which they so remained, is equitably payable out of their proceeds. It appears from the testimony of the trustee that he went through the houses and made inventory of the goods several days before the sale, which commenced May 3. This act of the trustee, it is conceived, was a sufficient taking of possession to reduce the goods in custodia legis; and if so, no lien for rent thereafter accruing could attach to them. (Tappan v. Moore, 18 Johns., 1; Thenial v. Hart, 2 Hill, 380; Denham v. Harris, 13 Ala., 465; Watson v. Hudson, 3 Brev., 60.) The lien is a security; the debt is that of the tenant. Sanderson’s tenancy did not terminate with the seizure. The rent thereafter arising constitutes a personal liability upon him, but no longer secured by lieu upon the goods which the court had taken from him and directed to othei' purposes. ‘Although the goods are permitted by the officer,’ i. e., sheriff after levying execution, ‘to remain upon the premises until rent is due, they are in the custody of the *440 law, and the lien will not attach.’ (Denham v. Harris, supra.) Note that the cases last cited are under statutes which, though analogous, are not identical with ours.”
For the reasons here stated, the order appealed from is affirmed.