**UNITED STATES of America, Appellant,**

v.

**Harry SAIDMAN, Trustee, Lobel Enterprises, Inc., et al., Appellees.**

**No. 12623.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 14, 1955.

Decided March 1, 1956.

Appellant's Petition for Rehearing In Banc Denied March 30, 1956.

Petition for Rehearing In Banc Filed by Appellee Square Deal Market Co., Inc. Denied on April 23, 1956.

Bastian, Circuit Judge, dissented in part.

504

Mr. Fred E. Youngman, Sp. Asst. to the Atty. Gen., with whom Messrs. Ellis N. Slack and A. F. Prescott, Sp. Assts. to the Atty. Gen., and Leo A. Rover, U. S. Atty., Harold H. Greene and Lewis Carroll, Asst. U. S. Attys., were on the brief, for appellant.

Mr. Henry E. Wixon, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Vernon E. West, Corp. Counsel, and Chester H. Gray, Principal Asst. Corp. Counsel, were on the brief, for appellee District of Columbia. Mr. Hymie Nussbaum, Asst. Corp. Counsel, also entered an appearance for appellee District of Columbia.

Mr. Ralph H. Deckelbaum, Washington, D. C., with whom Messrs. Bernard Margolius and Carleton U. Edwards, II, Washington, D. C., were on the brief, for appellee Square Deal Market Co., Inc.

Before BAZELON, WASHINGTON and BASTIAN, Circuit Judges.

WASHINGTON, Circuit Judge.

This appeal presents these questions: whether under Section 3466 of the Revised Statutes, 31 U.S.C.A. § 191, the claim of the United States for unpaid taxes is entitled to prior payment (1) over a landlord's lien for rent created by Section 45–915 of the D.C.Code, 1951, and (2) over a tax claim of the District of Columbia given priority by Section 47–2609, D.C.Code, 1951.

Lobel Enterprises, Inc. operated a grocery business in the District of Columbia on premises leased from Square Deal Market, Inc. On August 17, 1953, alleging that it was unable to pay its debts in full, Lobel assigned all of its property in trust to an assignee for the benefit of creditors. The assignee sold the assets on September 14, 1953, and, after payment of the expenses of administration, there remains in the hands of the successor trustee Saidman the amount of $1,548.81 for distribution to creditors.

On the date of the assignment Lobel was indebted to its landlord in the amount of $900 on account of two monthly rental payments of $450 each due July 1, 1953, and August 1, 1953. Lobel was also indebted on the date of the assignment to the United States for unpaid Federal taxes in the amount of $934.88, plus interest, and to the District of Columbia for unpaid sales and compensating-use taxes in the amount of $753.93, plus interest. Each of these creditors urged that its claim was entitled to prior payment from the available fund. The successor trustee filed his final account which was referred to the Auditor of the District Court. The Auditor recommended that the balance of $1,548.81 available for creditors be distributed to pay the landlord's claim of $900 in full and to pay the claim of the United States to the extent of $648.-81, the amount remaining. Objections were filed to the Auditor's report by both the United States and the District of

Columbia. After a hearing, the District Court ordered that the landlord's claim be paid in full, and that the District of Columbia take the remainder of the fund, or $648.81. The United States has appealed, claiming that Section 3466 of the Revised Statutes gives it priority over the claims of both the landlord and the District of Columbia.

I. *Priority as between the United States and the landlord.*

 Section 3466 of the Revised Statutes, 31 U.S.C.A. § 191, provides that—

> "Whenever any person indebted to the United States is insolvent * * * the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof * * *."

Its purpose is to secure adequate public revenue to sustain the public burdens, and it is to be construed liberally to effectuate that purpose.[1] United States v. Emory, 1941, 314 U.S. 423, 426, 62 S. Ct. 317, 86 L.Ed. 315. The section gives an "absolute priority" to "the payment of indebtedness owing the United States, whether secured by liens or otherwise." United States v. City of New Britain, 1954, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520. Its words "are broad and sweeping and, on their face, admit of no exception to the priority of claims of the United States." United States v. Waddill Co., 1945, 323 U.S. 353, 355, 65 S.Ct. 304, 306, 89 L. Ed. 294.

Notwithstanding the unqualified preference given by Section 3466, persons claiming that they held a perfected and specific lien on the debtor's property have frequently contested the right of the United States to have the debts due it satisfied first. The Supreme Court has, however, never decided whether the absolute priority accorded by Section 3466 would be overcome by a fully perfected and specific lien upon the property, since it has always found that the lien involved was not sufficiently specific and perfected. United States v. State of Texas, 1941, 314 U.S. 480, 484–486, 62 S.Ct. 350, 86 L.Ed. 356, and cases there cited; United States v. Waddill Co., supra, 323 U.S. at page 355, 65 S.Ct. 304; People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. at pages 370–371, 67 S.Ct. 340; United States v. Gilbert Associates, 1953, 345 U.S. 361, 365, 73 S. Ct. 701, 97 L.Ed. 1071. United States v. Waddill Co. indicates that for this purpose a lien is not sufficiently specific when, on the date of the assignment, the lien has not been actually asserted, and the amount of the lien or the precise property to which the lien has attached is unknown or unascertainable, 323 U.S. at pages 357–358, 65 S.Ct. 340, 89 L.Ed. 294; and that a lien is not perfected when, on the date of the assignment, the debtor has not been divested of title to, or possession of, the property involved. 323 U.S. at pages 358–359, 65 S.Ct. 340. Other cases reiterate that the priority of the United States is not destroyed where the lien-holder has not taken possession of, or acquired title to, the debtor's property subject to the lien prior to the time when Section 3466 becomes effective.[2]

1. Section 3466 is derived from Section 5 of the Act of March 3, 1797, c. 20, 1 Stat. 515, which was enacted as an aid in the collection of taxes. Price v. United States, 1926, 269 U.S. 492, 500–501, 46 S.Ct. 180, 70 L.Ed. 373. Its provisions have been in force since 1797 without significant modification. United States v. Emory, 314 U.S. at page 428, 62 S.Ct. 317; People of State of Illinois ex rel. Gordon v. Campbell, 1946, 329 U.S. 362, 370, 67 S.Ct. 340, 91 L.Ed. 348. For a review of the early history of the provi-

sion, see United States v. Fisher, 1805, 2 Cranch 358, 6 U.S. 358, 2 L.Ed. 304.

2. The early cases are entirely consistent with this rule. In Conard v. Atlantic Ins. Co., 1928, 1 Pet. 386, 26 U.S. 386, 7 L. Ed. 189, the debtor had assigned a cargo of tea to the insurance company to secure a loan prior to the time the priority of the United States attached to the debtor's property. It was held that the tea was not covered by the priority, since title to it had been transferred to the mortgagee.

See Spokane County v. United States, 1929, 279 U.S. 80, 93–94, 49 S.Ct. 321, 73 L.Ed. 621; United States v. State of Texas, 314 U.S. at page 488, 62 S.Ct. 350, 86 L.Ed. 356; People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. at page 376, 67 S.Ct. 340, 89 L.Ed. 294; United States v. Gilbert Associates, supra. In the last case the Supreme Court said, 345 U.S. at page 366, 73 S.Ct. at page 704:

> "In claims of this type 'specificity' requires that the lien be attached to certain property by reducing it to possession, on the theory that the United States has no claim against property no longer in the possession of the debtor. Thelusson v. Smith, 2 Wheat. 396, 4 L.Ed. 271. Until such possession, it remains a general lien. There is no ground for the contention here that the Town had perfected its lien by reducing the property to possession. * * * The taxpayer had not been divested by the Town of either title or pos-

session. The Town, therefore, had only a general, unperfected lien."

In this case the District Court concluded as a matter of law that the landlord had a "specific lien" on specific property. No conclusion was stated that the lien was "perfected." The landlord contends, however, that its lien was both specific and perfected. Our first task is then to ascertain whether this contention is correct, under the tests laid down by the Supreme Court for our guidance.[3]

The lien of the landlord arose under Section 45–915 of the D.C.Code, 1951, which gives a landlord a

> "tacit lien for his rent upon such of the tenant's personal chattels, on the premises, as are subject to execution for debt, to commence with the tenancy and continue for three months after the rent is due and until the termination of any action for such rent brought within said three months."

The lien may be enforced under Section 45–916[4] by attachment issued on affi-

---

It was stated as dictum in Thelusson v. Smith, 1817, 2 Wheat. 396, 15 U.S. 396, 4 L.Ed. 271, that if, before the right of preference has accrued to the United States, the debtor has conveyed bona fide his estate to a third person, or has mortgaged it to secure a debt, or if his property has been seized under a *fieri facias*, the property cannot be made liable to the United States because divested out of the debtor. The actual decision in the Thelusson case was, however, that the United States had priority over a prior judgment creditor who had a lien but who had not perfected it by levying on the property itself. See also Brent v. Bank of Washington, 1836, 10 Pet. 596, 35 U.S. 596, 9 L.Ed. 547, decided on the ground that the debtor did not have legal or equitable title to bank stock and thus the priority of the United States did not attach to the stock. As stated in United States v. State of Texas, 314 U.S. at pages 484–485, 62 S.Ct. at page 352, these cases seem to have been decided on the "theory that mortgaged property passes to the mortgagee and is no longer a part of the estate of the mortgagor."

3. There is no contention that the United States does not have the benefit of what-

ever rights Section 3466 may give it. The conditions necessary to bring that section into play are present. Lobel was indebted to the United States, since taxes are debts. Price v. United States, 1926, 269 U.S. 492, 499, 46 S.Ct. 180, 70 L.Ed. 373; State of Illinois ex rel. Gordon v. United States, 1946, 328 U.S. 8, 9, 66 S.Ct. 841, 90 L.Ed. 1049. It voluntarily assigned its property for the benefit of creditors, alleging that it was unable to pay its debts in full. It actually was insolvent.

4. Section 45–916 reads as follows:
 "The said lien may be enforced—
 "First. By attachment, to be issued upon affidavit that the rent is due and unpaid; or, if it be not due, that the defendant is about to remove or sell some part of said chattels.
 "Second. By judgment against the tenant and execution, to be levied on said chattels, or any of them, in whosesoever hands they may be found.
 "Third. By action against any purchaser of said chattels, with notice of the lien, in which action the plaintiff may have judgment for the value of the chattels purchased by the defendant not exceeding the rent in arrear."

davit; by execution on the chattels, after judgment against the tenant, wherever they are found; and by action against any purchaser of the chattels with notice of the lien.

We said in Moses v. Labofish, 1942, 76 U.S.App.D.C. 401, 402, 132 F.2d 16, 17, that the lien is created by the statute and exists independently of the several means of enforcement.[5] But for present purposes this is not enough. In the Waddill case, the Supreme Court noted that the landlord's lien there involved had been declared by the Supreme Court of Appeals of Virginia to be a fixed and specific statutory lien on all goods found on the premises, not merely an inchoate lien, and " 'that such a lien exists independent of the right of distress or attachment, which are merely remedies for enforcing it' ". 323 U.S. at page 356, 65 S.Ct. at page 306, 89 L.Ed. 294. Yet it held that this did not determine whether the lien was "sufficiently specific and perfected to raise questions as to the applicability" of the Federal priority. 323 U.S. at pages 356–357, 65 S. Ct. at page 306. Its conclusion was that the landlord's lien was unspecific and unperfected in its actual legal effect, and was therefore inferior to the claim of the United States.

■ While Section 45–915 of the Code creates a lien, described as tacit, for rent for three months upon such of the personal chattels on the premises as are subject to execution for debt, the section does not state that the lien shall have priority nor does it purport to place title to, or possession of, the chattels in the landlord. The landlord may acquire title to or possession of the chattels on which the lien exists by following the first or second method prescribed by Section 45–916 for enforcing the lien, but

affirmative action to accomplish this is required. The statutory provisions then do not of their own force create a specific and perfected lien in the sense long understood as essential to overturn the Federal priority.

■ Nor did the landlord have a specific and perfected lien in actual fact. The identity of the lienor, the landlord, and the amount of the lien, or $900, were of course known on the date of the assignment. But at that time the landlord had done nothing to indicate that it would insist upon its statutory lien. It had not filed the required affidavit and attached the tenant's property, or any part thereof; it had not obtained judgment against the tenant and levied execution on its property or any part thereof. Thus, although the statute makes the lien apply generally to such personal property on the premises as is subject to execution for debt,[6] the specific part of the property required to satisfy the lien had not been segregated and the debtor had not been divested of title or possession as to any part of his property. Apart from any other factors, the failure of the landlord to acquire title or take possession prior to the assignment compels the holding, under the Supreme Court cases cited, that its lien was not perfected in the sense required to defeat priority under Section 3466. The landlord here had merely "a caveat of a more perfect lien to come", People of State of New York v. Maclay, 1933, 288 U.S. 290, 294, 53 S.Ct. 323, 324, 77 L.Ed. 754, a lien which might have been, but was not, made perfect before the determinative date.

We must conclude that the United States is entitled to have its tax claim paid in full before the claim of the landlord becomes eligible for payment.

---

5. In the Moses case, the lien would seem actually to have been specific and perfected within the tests laid down by the Supreme Court for purposes of applying Section 3466, although that section was not there involved. The landlord had obtained judgment against the tenant, and the marshal had levied on the chattels before the tenant filed his voluntary petition in bankruptcy.

6. It is agreed that the whole fund available for distribution here was derived from personal property on the premises that was subject to execution for debt.

II. *Priority as between the United States and the District of Columbia.*

The United States bases its claim to priority on the unrestricted right to first payment of its debts accorded by Section 3466, already discussed, whereas the claim of the District for priority rests on Section 47–2609 of the District of Columbia Code, 1951.[7] Section 47–2609 is found in the title relating to sales taxes and is made applicable to compensating-use taxes by Section 47–2707 of the Code. It provides that where property is assigned for the benefit of creditors, these taxes for which the debtor is liable "shall be a prior and preferred claim"; and it is the duty of any United States marshal, receiver, assignee, or any other officer to "first pay to the Collector the amount of said taxes * * * before making any payment of any moneys to any judgment creditor or other claimants of whatsoever kind or nature." Personal liability for the tax is imposed if the officer violates the terms of the section.[8]

In District of Columbia v. Greenbaum, 1955, 96 U.S.App.D.C. 168, 171, 223 F.2d 633, 636, we stated in footnote 13 of the opinion that the scope of Section 47–2609[9] will be similar to that of Section 3466 of the Revised Statutes in local insolvency proceedings, as distinguished from bankruptcy proceedings under the Federal Bankruptcy Act. But that statement was not a holding that the District's priority will be equivalent to that of the United States under Section 3466 in contests between the two. Although the United States was an appellee in that case, it did not urge priority for its tax claim under Section 3466, the Supreme Court having already decided that in proceedings under the Bankruptcy Act the taxes due the United States take the priority accorded them by Section 64, sub. a of the Bankruptcy Act, rather than having a first priority under Section 3466. See Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 1912, 224 U.S. 152, 32 S.Ct. 457, 56 L.Ed. 706, and cf. State of Missouri v. Ross, 1936, 299 U.S. 72, 57 S.Ct. 60, 81 L.Ed. 46, and United States v. Emory, 1941, 314 U.S. 423, 427–429, 62 S.Ct. 317, 86 L.Ed. 315. Thus, our statement in the Greenbaum case, at footnote 13, related to the scope, in local insolvency proceedings, of the District's first priority for sales and use taxes in relation to creditors other than the Federal Government. *A fortiori* the

---

7. This section reads:

"Whenever the business or property of any person subject to tax under the terms of this chapter, shall be placed in receivership or bankruptcy, or assignment is made for the benefit of creditors, or if said property is seized under distraint for property taxes, all taxes, penalties, and interest imposed by this chapter for which said person is in any way liable shall be a prior and preferred claim. Neither the United States marshal, nor a receiver, assignee, or any other officer shall sell the property of any person subject to tax under the terms of this chapter under process or order of any court without first determining from the Collector the amount of any such taxes due and payable by said person, and if there be any such taxes due, owing, or unpaid under this chapter it shall be the duty of such officer to first pay to the Collector the amount of said taxes out of the proceeds of said sale before making any payment of any moneys to any judgment creditor or other claimants of whatsoever kind or nature. Any person charged with the administration or distribution of any such property as aforesaid who shall violate the provisions of this section shall be personally liable for any taxes accrued and unpaid which are chargeable against the person otherwise liable for tax under the terms of this section."

8. This provision is comparable to Section 3467 of the Revised Statutes, as amended, 31 U.S.C.A. § 192, which states:

"Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

9. There referred to as Section 132 of the District of Columbia Revenue Act of 1949.

District's claim would be prior to that of a landlord who has not perfected his lien, for the reasons already given in connection with our discussion of Section 3466 and the landlord's lien. But the question here, as to the rights of the United States and the District under statutes giving each a first priority, was not present or decided in the Greenbaum case.

That question must now be decided. We are faced with the dilemma of choosing between two statutes enacted by Congress, each giving a first priority in terms absolute, each applicable here, and each imposing a personal liability on the assignee if he pays any other debt of the insolvent assignor first. Obviously, neither statute can be applied as it is written without violating the other, and we must therefore find some solution from extraneous aids.

We have searched the legislative history in vain for some indication from the Congress as to whether, in enacting the District statute, it intended to create an exception from Section 3466 of the Revised Statutes with respect to the District sales and use taxes. As we noted in the Greenbaum case,[10] the section follows almost verbatim the Maryland sales tax statute, Md.Ann.Code, 1951, art. 81, § 339. In fact, sales-tax officials of Maryland were invited to sit with the subcommittee and advise it in writing the bill. 95 Cong.Rec. 6087 (1949). Obviously, the Maryland statute, even though in terms absolute, could not and did not make the state taxes prior to the claims of the United States in insolvency proceedings of the types covered by Section 3466.[11] But in legislating for the District of Columbia Congress is not subject to the same limitations as are state legislatures, Neild v. District of Columbia, 1940, 71 App.D.C. 306, 309–311, 110 F.2d 246, 249–251, and

we can hardly impute to it without more an intent to have the District taxes occupy a priority status equivalent only to that of state taxes.

Other factors lead us to resolve the priority dispute in favor of the District. Section 47–2609 is a more recently enacted statute awarding priority to only one kind of tax claim whereas the Federal statute prescribes a general priority for all kinds of debts. The limited nature of the District's priority given by a later statute using language just as forceful as that of Section 3466[12] requires the inference that Congress intended to create an exception from the broad and general Federal priority in this one respect. Cf. Cook County National Bank v. United States, 1882, 107 U.S. 445, 2 S.Ct. 561, 27 L.Ed. 537; Mellon v. Michigan Trust Co., 1926, 271 U.S. 236, 46 S.Ct. 511, 70 L.Ed. 924; United States v. Guaranty Trust Co., 1930, 280 U.S. 478, 50 S.Ct. 212, 74 L. Ed. 556. In all of the cases just cited the Supreme Court held that later acts of Congress created an exception, as to specific debts due the United States, from the general priority accorded by Section 3466, even though the act did not in terms refer to Section 3466 and the legislative history was apparently silent on the matter. The repugnancy between the two priority statutes here is far clearer than the inconsistency in any of the cited cases.

We conclude that Section 47–2609 as the later, more specific, and more limited enactment creates an exception to Section 3466 to the extent of the District's claim for sales and use taxes, and that the District's claim for such taxes has first priority in local insolvency proceedings over the United States. We are reinforced in this conclusion by the consideration that since Congress

10. See 96 U.S.App.D.C. at pages 170–171, 223 F.2d at pages 635–636.

11. See, for example, Spokane County v. United States, 1929, 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621; United States v. State of Texas, 1941, 314 U.S. 480, 62 S.Ct.

350, 86 L.Ed. 356; People of State of Illinois ex rel. Gordon v. Campbell, 1946, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348; United States v. Gilbert Associates, 1953, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071.

12. It may, indeed, be more forceful.

has the obligation to provide revenues for both the District and the Federal Government, there could have been no real incentive for subordinating the District's taxes in an insolvency proceeding.

Our decision requires that the case be remanded. It remains to consider how the available fund of $1,548.81 is to be distributed on remand. The District did not appeal from the order of the District Court. Under it the District was awarded $648.81 although, had it appealed, it would have been entitled to the full amount of its claim. We will not direct the District Court to increase the amount allowed the District. On remand the District Court may either order that the $900 previously allowed to the landlord be paid to the United States, or if it can justify so doing despite the failure to appeal, allow the District its full claim and allot the balance to the United States.

Remanded for proceedings consistent with this opinion.

BASTIAN, Circuit Judge (concurring in part and dissenting in part).

I concur in so much of Judge Washington's opinion as holds the lien of the District of Columbia to be superior to that of the United States; but believe that the landlord's statutory lien is superior to those of both the United States and the District of Columbia.

This case involves a dispute over priority of payment out of assets in the hands of an assignee for the benefit of creditors. Claims to the fund are (1) landlord's lien for rent, (2) claim of the United States for unpaid federal income withholding taxes, 26 U.S.C.A. (Internal Revenue Code of 1939) §§ 1621–1636, and Federal Insurance Contributions Act taxes (id. §§ 1400–1432), and (3) claim of the District of Columbia for unpaid gross sales and compensating-use taxes, Title 47, District of Columbia Code, 1951, §§ 2601–2619, 2701–2711.

Lobel Enterprises, Inc., a Delaware corporation having its principal place of business in the District of Columbia, made an assignment of all of its property to Albert E. Steinem, in trust for the benefit of its creditors, pursuant to Title 28, §§ 2601–2610 of the District of Columbia Code 1951. The deed of assignment was duly filed and, on the assignee's petition, bond was fixed by the District Court. After intermediate proceedings, the matter was referred to the Auditor of the District Court, to state the final account of the assignee and to make recommendations concerning fees and allowances and distribution of the balance. Later, Harry Saidman, one of the appellees herein, was appointed trustee to succeed Albert E. Steinem, who had died. There was not enough realized from the property of the assignor to satisfy in full the preferred claims of the landlord, the United States, and the District of Columbia, to say nothing of the claims of general creditors. It therefore became necessary for the court to determine the order of priority of payment of the preferred creditors. The Auditor filed his report, embracing both the first and final account of the deceased trustee and Harry Saidman, trustee, with his recommendations. Objections to the Auditor's report and motions to sustain objections were filed by the United States and by the District of Columbia.

After considering the objections, the trial court, in its order and conclusions of law confirming the Auditor's report, held that the landlord had a specific lien on the personal chattels and is entitled to have its claim for rent paid first; that the claim of the District of Columbia for unpaid sales and use taxes is entitled to priority over the tax claim of the United States and should be paid second in order; that the tax claim of the United States is third in order of payment. The United States appeals.

The District of Columbia did not appeal, but filed a brief setting forth its position and claiming that the trial court should be affirmed insofar as the court ruled that it (the District of Columbia) is entitled to payment of its claim prior to that of the United States, but asking that this court determine that the land-

lord is not entitled to payment prior to payment of the claim of the District of Columbia.

There is no question concerning the validity or the amounts of the three claims involved in this appeal. The amount of the landlord's lien was fixed by the statute, at the amount due on the date of the assignment, all having accrued within the three month statutory period hereinafter referred to.

With respect to the general law of liens, I believe that priority of (statutory) liens is determined by another principle of law, namely, "the first in time is the first in right." Authorities for this are numerous and we find that Chief Justice Marshall elucidated it in Rankin v. Scott, 1827, 12 Wheat. 177, 25 U.S. 177, at page 179, 6 L.Ed. 592:

> "The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him, in a court of law or equity, to a subsequent claimant." [1]

In 1828 the Supreme Court, recognizing the commercial use of liens as a form of security in our financial structure, stated in Conard v. Atlantic Insurance Co., 1828, 1 Pet. 386, 26 U.S. 386, at page 441, 7 L.Ed. 189:

> " * * * it has never yet been decided by this court, that the prior-

ity of the United States will divest a specific lien, attached to a thing, whether it be accompanied by possession or not."

From a reading of cases concerning statutory liens, we find that where the statute is concerned, Rev.Stat. § 3466 (1875), 31 U.S.C.A. § 191, unsecured demands are subordinated,[2] consensual liens are probably preserved,[3] and perfected liens remain undetermined after years of discussion.[4]

In an early leading case, Thelusson v. Smith, 1817, 2 Wheat. 396, 15 U.S. 396, at page 425, 4 L.Ed. 271, the Supreme Court stated:

> "The United States [debts] are to be first satisfied; but then, it must be out of the debtor's estate."

The Court added:

> "If, therefore, before the right of preference has accrued to the United States, the debtor has made a *bona fide* conveyance of his estate to a third person, or has mortgaged the same to secure a debt, or if his property has been seized under a *fi. fa.*, the property is divested out of the debtor, and cannot be made liable to the United States."

In United States v. Atlantic Municipal Corp., 1954, 212 F.2d 709, we find that the Fifth Circuit, in interpreting § 3466 of the Revised Statutes, and relying on United States v. City of New Britain, referred to in Note 1, supra, stated, 212 F.2d at page 711:

> "This statute applies only as

---

**1.** The " 'first in time is the first in right' " rule is reiterated by the Supreme Court in United States v. City of New Britain, 1954, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 92 L.Ed. 520, cited by the majority, although in that case the Court found the lien involved not sufficiently specific and perfected—different, I think from the lien involved here.

**2.** United States v. State of Texas, 1941, 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356; United States v. Knott, 1936, 298 U.S. 544, 56 S.Ct. 902, 80 L.Ed. 1321; People of State of New York v. Maclay, 1933, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754;

Spokane County v. United States, 1929, 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621.

**3.** Brent v. Bank of Washington, 1836, 10 Pet. 596, 35 U.S. 596, 9 L.Ed. 547; Conard v. Atlantic Insurance Co., supra; United States v. Hooe, 1805, 3 Cranch 73, 7 U.S. 73, 2 L.Ed. 370.

**4.** United States v. State of Texas, supra. See Rogge, The Differences in the Priority of the United States in Bankruptcy and in Equity Receiverships, 43 Harv.L. Rev. 251 (1929); Sainer, Correlation of Priority and Lien Rights in the Collection of Federal Taxes, 95 U.Pa.L.Rev. 739 (1947).

against unsecured debts, that is, debts not secured by a specific and perfected lien. It has never been, we think it will never be, applied as it is sought to be applied here, to accord payment to a debt due the United States in preference to a claim secured by a lien which is prior in time and superior in law to the lien of the United States securing the debt for which preferential payment is sought."

We find no exception to this holding, for in United States v. Security Trust & Savings Bank, 1950, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53, and in United States v. Gilbert Associates, 1952, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071, it is evident that the Supreme Court was considering only the priority of inchoate and general liens over that of the claim of the United States for taxes. Again, in People of State of Illinois ex rel. Gordon v. Campbell, 1946, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348, the Supreme Court points out that it [the Court] has never decided whether the priority, Rev.Stat. § 3466, is overcome by a fully perfected and specific lien, and goes on to say that it need not be decided in that case.

In the instant case, the landlord bases his claim to priority on a local statute giving to the landlord a lien for rent on such of the tenant's personal chattels on the premises as are subject to execution for debt. The statute (now Title 45) was adopted in 1867. This act of Congress of February 22, 1867, entitled "An Act to amend the Laws of the District of Columbia in Relation to Judicial Proceedings therein", 14 Stat. 403, contains, among other radical and important changes in the then existing law, a provision, designated as Section 12 of the Act, and which was subsequently incorporated into the Revised Statutes of the United States for the District of Columbia as Sections 677 to 679, both inclusive, of that revision, whereby the power of distraint exercised by landlords at common law to seize the goods of their tenants for rent in arrear was abolished and, in place of it, it was enacted that:

"The landlord shall have a tacit lien upon such of the tenant's personal chattels, on the premises, as are subject to execution for debt, to commence with the tenancy and continue for three months after the rent is due, and until the termination of any action for such rent brought within the said three months."

And this lien *may be enforced:*

"1st. By attachment, to be issued upon affidavit that the rent is due and unpaid; or, if not due, that the defendant is about to remove or sell some part of said chattels; or,

"2d. By judgment against the tenant and execution to be levied on said chattels or any of them, in whosesoever hands they may be found; or,

"3d. By action against any purchaser of said chattels, with notice of the lien, in which action the plaintiff may have judgment for the value of the chattels purchased by the defendant, not exceeding the rent, arrear, and damages."

The District of Columbia claims priority on an Act of Congress of local application in the District of Columbia, Title 47, § 2609, District of Columbia Revenue Act of 1949, 63 Stat. 117, ch. 146. The statute provides:

"Whenever the business or property of any person subject to tax under the terms of this chapter, shall be placed in receivership or bankruptcy, or assignment is made for the benefit of creditors, or if said property is seized under distraint for property taxes, all taxes, penalties, and interest imposed by this chapter for which said person is in any way liable shall be a prior and preferred claim."

The United States predicates its claim on a general statute dating back to 1797, which has been known as Revised Statutes § 3466 and is found in 31 U.S.C.A. § 191. This statute provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Referring to the statutes quoted above, it is to be noted that the statute creating a lien in favor of the landlord does more than accord to him a right or priority of claim for distribution of assets. It creates a perfected lien on specific personal property. We find but one exception to this rule, cf. Fowler v. Rapley, 1872, 15 Wall. 328, 82 U.S. 328, 21 L.Ed. 35, that being goods sold in the ordinary course of business. With the exception of this perfected lien on specific property, the landlord has no priority under the District of Columbia law. The fact remains, however, that the landlord does have a perfected lien on specific personal chattels of the tenant found on the premises. Furthermore, there is nothing required of the landlord to perfect this lien. Section 916 of Title 45 provides for enforcement of this specific lien but, in my view, is directed only to the sale or removal of the chattels by the tenant and to the purchaser of said chattels with notice of the lien. Actually the lien is perfected and attaches when the tenant moves the chattels onto the premises. It applies to all chattels on the leased premises which are subject to execution for debt. It commences with the tenancy and, as this court has said in Moses v. Labofish, 1942, 76 U.S.App.D. C. 401, 132 F.2d 16, at page 17:

"The lien is created by the statute and exists independently of the several means of enforcement which the statute permits."

Shortly after the adoption of the Act of 1867, the Supreme Court, in Webb v. Sharp, 1871, 13 Wall. 14, 80 U.S. 14, 20 L.Ed. 478, had occasion to consider the effect of that Act and whether it was superior to a chattel mortgage subsequently placed on the property to which the lien attaches. The Court held, 13 Wall. at page 16:

"The landlord's lien is an implied or tacit lien, created by law to secure the performance of another contract, and, of the two, the landlord's is the prior lien, and cannot be displaced by the other. The landlord's lien attached to the printing-press the moment it was placed upon the demised premises, before the mortgage was given, and as long as it remained on the premises the lien continued until each instalment of rent became due and for three months afterwards, and then ceased as to that instalment. Had the tenant made an absolute and bona fide sale of the press, the case would have been a different one. The law protects bona fide purchasers without notice of the landlord's lien. Goods sold in the ordinary course of trade undoubtedly become discharged from the lien; otherwise business could not be safely carried on. This was so decided by the Supreme Court of Iowa in giving construction to a similar law of that State [citing Grant v. Whitwell, 9 Iowa 152 156]. But neither the words nor the reason of the law call for a postponement of the landlord's lien to that of a subsequent mortgage or execution creditor, so long as the goods remain on the demised premises and continue to be the property of the tenant."

Several years thereafter (1878), the then Supreme Court of the District of Columbia, in General Term, had the same statute before it in the case of Bryan v. Sanderson, 10 D.C. 431, 3 Mac-

Arthur 431. There it was held that when a chattel trust has been *executed* by a tenant upon his furniture after the same has been placed upon the leased premises, and a *judgment creditor's bill*, to which the landlord is made a party defendant, is filed against the tenant, and the landlord, in his answer to such bill, asserts his lien for rent in arrear and asks judgment of the same out of the funds to be realized from the sale of such furniture, the landlord has precedence over the deed of trust, notwithstanding the fact that he had taken no steps prescribed by the statute for enforcing his tacit lien. The court adopted as its own opinion the report of the Special Auditor [5] and quoted with approval his language, as follows:

" 'In the second place, it is doubtless true that the lien created by the statute must be enforced, if at all, in strict compliance with its provisions. But where the disposition of the property upon which the lien exists, or of the proceeds arising from its sale, has been assumed by a court of equity, does the lien need to be enforced? It will be observed that the statutory lien differs in a material respect from its common-law prototype, the right to destrain. Under the latter, unless distraint were actually made, the landlord acquired no lien; his was an inchoate right to a lien to be perfected by distress, rather than a lien in itself. But the lien of the statute exists independently of the prescribed methods of enforcing it. Indeed, commencing with the tenancy, it exists *before* those methods have been or can be resorted to—i. e., before any rent has accrued. "A statutory lien implies security upon the thing before the warrant to seize it is levied. It ties itself to the property from the time it attaches to it, and the levy and sale of the property are only the means of enforcing it." In other words, *if the lien is given by* the statute, proceedings are not necessary to fix the *status* of the property. (Morgan v. Campbell, 22 Wall. 381 [22 L.Ed. 796]; see, also, Grant v. Whitwell, 9 Iowa [152] 153; Carpenter v. Gillespie, 10 Iowa 592; Doane v. Garretson, 24 Iowa [351] 355.) These Iowa decisions are upon a statute substantially the same as the statute in force in this District.' "

See also Fowler v. Rapley, supra; The Richmond v. Cake, 1 App.D.C. 447; Spilman v. Geiger, 61 App.D.C. 164, 58 F.2d 890; where the court held that the landlord's lien for rent on tenant's personal chattels on the leased premises was superior to a chattel mortgage given by the tenant after the tenancy commenced but before the commencement of the period for which the rent remained unpaid.

Certainly if, as the Supreme Court held in Thelusson v. Smith, supra, debts of the United States are to be settled "out of the debtor's estate"—as certainly should be the case—we can see that the debtor's estate is what is left after satisfying the liens on the property because, of course, the debtor's estate is that and that only. To hold otherwise would mean that the Government's rights under Section 3466 are superior even to a first mortgage. The Supreme Court has held, see Webb v. Sharp, supra, that this lien is superior to a first mortgage placed on the chattels after the tenancy commenced; consequently it follows, that if the Government's lien is superior to the Landlord's lien, it is also superior to a mortgage lien. Such a ruling would mean that the debts of the United States, instead of being satisfied out of the debtor's estate, see Thelusson v. Smith, supra, would be satisfied out of the estate of the landlord. This should not be so. I hesitate to consider the effect on the commercial life of the

5. The Special Auditor was J. J. Darlington, Esq., for many years one of the leading members of the District of Columbia bar.

country if the rule were otherwise. Certainly no one would consider loaning money as a first mortgage on real or personal property if it could be displaced by the debtor's subsequent failure to pay his withholding, federal insurance contributions, or District sales and use taxes.

It follows that since the landlord has this perfected lien on specific property he takes priority over the claims of both the United States and the District of Columbia, inasmuch as the rights of both the United States and the District of Columbia are rights of priority to be paid out of the general assets.

In attempting to answer the claim of the landlord's priority, both the United States and the District of Columbia rely on the authority of United States v. Waddill Co., 1945, 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294. In that case the Court held that the Virginia statute clearly subordinates the claims of both the landlord and the municipality to that of the United States. The Court makes it clear that in the past it recognized that certain exceptions could be read into the statute and that the question as to whether the priority of the United States might be defeated by a specific and perfected lien upon the property at the time of the insolvency or voluntary assignment has not been expressly decided. Once again that Court reaches no decision with respect to an exception.

"* * * we do not reach a decision as to whether such an exception is permissible for we do not believe that the asserted liens of the landlord and the municipality were sufficiently specific and perfected on the date of the voluntary assignment to cast any serious doubt on the priority of the claim of the United States." Id., 323 U.S. at pages 355, 356, 65 S.Ct. at page 306.

The Court went on to point out, in the Waddill case, how the lien in question was not perfected and the property involved not sufficiently specific.

"Tested by its legal effect under Virginia law, the landlord's lien in this instance appeared to serve 'merely as a *caveat* of a more perfect lien to come.' People of State of New York v. Maclay, supra, 288 U.S. at page 294, 53 S.Ct. at page 324, 77 L.Ed. 754. As of the date of the voluntary assignment, it was neither specific nor perfected. It gave the landlord only a general power over unspecified property rather than an actual interest in a definitive portion or portions thereof.

"Specificity was clearly lacking as to the lien on June 19, 1941, the date of the assignment. On that day it was still uncertain whether the landlord would ever assert and insist upon its statutory lien. Until that was done it was impossible to determine the particular six months' rent, or a proportion thereof, upon which the lien was based. The lien did not relate to any particular six months' rent but could attach only for the rent which might be due at or after the time when the lien was asserted. Wades v. Figgatt, 75 Va. 575, 582. And if it were asserted at a time when the tenancy had terminated or would terminate within six months of the date to which rent had been fully paid, the lien could only cover less than six months' rent. Conceivably the amount of rent due or to become due was uncertain on the day of the assignment. The landlord may have been mistaken as to the rental rate or as to payments previously made and the tenant may have been entitled to a set-off. See Allen v. Hart, 18 Gratt. 722, 59 Va. 722, 737; Hancock v. Whitehall Tobacco Warehouse Co., 100 Va. 443, 447, 41 S.E. 860. Moreover, while the lien legally attached to all such property as might be on the premises when the lien was asserted or within thirty days prior to distraint, the landlord

**516**

could distrain goods only to the extent necessary to satisfy the rent justly believed to be due, the tenant possessing an action for damages for excessive distraint. Va.Code, § 5783; Fishburne v. Engledove, 91 Va. 548, 22 S.E. 354; Gurfein v. Howell, 142 Va. 197, 128 S.E. 644. Thus until the extent of the lien was made known by the landlord and until some steps had been taken to distrain or attach sufficient property to satisfy the lien, it was impossible to specify the goods actually and properly subject to the lien. Some of the goods on the premises may have been subject to mortgages or liens which attached before the goods were brought on the premises, in which case the landlord's lien would be inferior. Va.Code, § 5523. And if other goods were removed after the date of the voluntary assignment but more than thirty days before the distraint, or attachment, the right of distraint and attachment as to those goods would disappear. Va.Code, § 5523; Dime Deposit & Discount Bank [of Scranton, Pa.] v. Wescott, 113 Va. 567, 75 S. E. 179. These factors compel the conclusion that neither the rent secured by the lien nor the property subject to the lien was sufficiently specific and ascertainable on the day of the voluntary assignment to fall within the terms of the suggested exception." Id., 323 U.S. at pages 357, 358, 65 S.Ct. at page 306.

Thus, in Waddill, the Supreme Court again expressly left open the question as to whether the landlord would have a prior right had he properly asserted his lien.

In the instant case, the landlord's lien under the District of Columbia statute, and as held in Moses v. Labofish, supra, is a perfected lien. As indicated earlier, nothing is required of the landlord to perfect his lien—the need of distraint at common law having been abolished. It [the lien] attaches the moment the tenant moves the personal chattels on to

the premises. It applies to *all* chattels on the leased premises subject to execution for debt. It is exact in its terms with respect to the time and the amount due, for the lien not only commences with the tenancy but also continues for three months after the rent is due and until the termination of any action for such rent brought within the said three months. The landlord's lien is, in my opinion, both specific and perfected.

I think that the judgment of the District Court was in all respects correct, and should be affirmed.