In re WPG, INC., Debtor.

WPG, Inc., Plaintiff,

v.

Internal Revenue Service, et al., Defendants.

Bankruptcy No. 99–02150.
Adversary No. 00–10058.

United States Bankruptcy Court,
District of Columbia.

July 12, 2001.

Leslie W. Lickstein, Leslie W. Lickstein, P.C., Fairfax, VA, for debtor.

*DECISION GRANTING DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT*

S. MARTIN TEEL, Jr., Bankruptcy Judge.

This is a dispute between the District of Columbia and the Internal Revenue Service ("IRS") regarding which of those two entities' tax liens take priority to funds held by the debtor for distribution in accordance with nonbankruptcy law. In claiming priority for its sales tax liens, the District relies upon a congressional enactment now embodied in D.C.Code Ann. § 47–2012 (1997 Repl.) (which the court will refer to as "§ 2012"). In claiming priority for its federal tax liens, the IRS relies upon the federal doctrine of choateness that generally controls the priority between competing tax liens and that incorporates as an element the general rule of lien law of "first in time, first in right." The court will rule in favor of the District that § 2012 trumps the choateness doctrine.

I

The debtor holds proceeds of property to which attached liens for taxes owed the United States, which has appeared through its Internal Revenue Service in this case, and liens securing sales taxes owed the District. The parties are in agreement that the proceeds must first be

applied to postpetition taxes, leaving $15,000 to be applied to the tax liens.[1] That $15,000 must be distributed in accordance with the priority of the liens under nonbankruptcy law. *See Pearlstein v. U.S. Small Business Admin.,* 719 F.2d 1169, 1175–76 (D.C.Cir.1983) ("the relative priorities of liens in bankruptcy ... [are] to be determined according to the nonbankruptcy lien law").[2] The District's sales tax liens, which exceed $15,000, would not have priority under the choateness doctrine, if that doctrine controlled, because the federal tax liens arose before the sales tax liens: the sales tax lien was not asserted until many months after the federal tax liens attached.

## II

■ In deciding which entity's tax liens take priority to the $15,000, the issue is which of two rules of law—§ 2012 and the doctrine of choateness—trumps the other. Both rules are creatures of federal law because Congress enacted § 2012 pursuant to its legislative power over the District of Columbia and because the choateness doctrine is a product of federal common law. Accordingly, the Supremacy Clause of the U.S. Constitution does not supply the answer.

The outcome turns on two decisions of the court of appeals for this circuit, decided less than one year apart, *District of Columbia v. Greenbaum,* 223 F.2d 633 (D.C.Cir.1955), and *United States v. Saidman,* 231 F.2d 503 (D.C.Cir.1956). The provision that is now § 2012[3] was in force in *Greenbaum* and *Saidman.* Enacted by Congress, the D.C.Code provision was a federal law (albeit of a highly local nature codified in the D.C.Code, not the U.S.Code). The D.C.Code provision conflicted in *Greenbaum* and *Saidman* with U.S.Code provisions that would accord priority (or the same level of priority) to federal tax claims. Accordingly, in both cases the court had to decide whether priority of competing tax claims was governed by the D.C.Code provision or instead by a U.S.Code provision (the Bankruptcy Act in *Greenbaum,* the federal insolvency statute in *Saidman*). The court reached opposite conclusions in the two cases. The court held that the U.S.Code provision invoked in *Greenbaum* trumped the D.C.Code provision, but that the D.C.Code provision trumped the U.S.Code provision invoked in *Saidman.*

Because a U.S.Code provision does not always trump § 2012, it seems obvious that a federal common law rule of priority, the choateness doctrine, may not necessar-

1. Although this case was never converted to chapter 7, the parties apparently recognized that it could be and that in chapter 7 the tax liens would be paid only after the postpetition taxes were paid. 11 U.S.C. § 724(b). A prior order in the main case approving the sale thus directed payment of the postpetition taxes. The court has dismissed the case, retaining jurisdiction over this adversary proceeding, upon the understanding that the postpetition taxes are still to be paid first, with the priority of the tax liens as to the remaining $15,000.00 to be decided under nonbankruptcy law.

2. Although the prior order in the main case also provided for pro rata distribution of the

$15,000, it also provided that the liens "transferred to the proceeds of the sale without the alteration of priority." The order was ineffective to determine the priority of the liens because an adversary proceeding was required. F.R.Bankr.P. 7001. Both the IRS and the District have recognized the error of the provision regarding pro rata distribution, and have briefed the issue on the basis that the $15,000 must be distributed in accordance with lien priorities under nonbankruptcy law.

3. At that time, the provision was codified as D.C.Code Ann. § 47–2609 (1951). *See Greenbaum,* 223 F.2d at 635 n. 4.

ily trump § 2012. The court concludes that this case is more like *Saidman* than *Greenbaum,* such that § 2012 trumps the choateness doctrine generally applicable to deciding priority of competing tax liens.

### A.

Section 2012 provides:

**§ 47–2012 Tax a preferred claim; priority over property taxes.**

Whenever the business or property of any person subject to tax under the terms of this chapter, shall be placed in receivership or bankruptcy, or assignment is made for the benefit of creditors, or if said property is seized under distraint for property taxes, all taxes, penalties, and interest imposed by this chapter for which said person is in any way liable shall be a prior and preferred claim. Neither the United States Marshal, nor a receiver, assignee, or any other officer shall sell the property of any person subject to tax under the terms of this chapter under process or order of any court without first determining from the Collector the amount of any such taxes due and payable by said person, and if there be any such taxes due, owing, or unpaid under this chapter, it shall be the duty of such officer to first pay to the Collector the amount of said taxes out of the proceeds of said sale before making any payment of any moneys to any judgment creditor or other claimants of whatsoever kind or nature. Any person charged with the administration or distribution of any such property as aforesaid who shall violate the provisions of this section shall be personally liable for any taxes accrued and unpaid which are chargeable against the person otherwise liable for tax under the terms of this section.

As observed in *Pearlstein,* 719 F.2d at 1177, § 2012 gives the District's claim for sales taxes "a first priority in terms absolute." [Citation omitted.] Section 2012 trumps the general rule of determining lien priority, the doctrine of "first in time, first in right," in a contest between D.C. sales taxes and an SBA mortgage. *Pearlstein,* 719 F.2d at 1177–78. Similarly, D.C. sales taxes are entitled under § 2012 to a priority over a prior perfected security interest. *Malakoff v. Washington,* 434 A.2d 432, 437 (D.C.1981). The issue is whether Congress intended that nevertheless an exception should exist for federal tax liens, according them a priority over later-arising D.C. sales tax liens, despite § 2012, based on the choateness doctrine and its incorporation of the general rule of "first in time, first in right."

### B.

*Greenbaum* was a case under the Bankruptcy Act. The court held that the Bankruptcy Act instead of the provision that is now § 2012 controlled distribution of funds in a liquidation case under chapter VII of the Bankruptcy Act even though the D.C.Code provision was a later-enacted provision and specifically applied when a person's business or property was placed in "receivership or bankruptcy." The District sought to obtain payment of its prepetition unsecured tax claims first, ahead of claims of administration and other prepetition unsecured tax claims, and to include payment of penalties. The Bankruptcy Act, based on a careful assessment by Congress of what claims were entitled to priority because of superior equities, would have denied the District such treatment.

The legislative history revealed that the D.C.Code provision was adapted from a Maryland statute (which similarly contained the word "bankruptcy" but which, as a state statute, could not apply to proceedings under the Bankruptcy Act). The

court accordingly held that in using the word "bankruptcy" in the provision, Congress meant to refer only to local insolvency proceedings, not cases under the Bankruptcy Act. *Greenbaum*, 223 F.2d at 635–36. In the part of the decision of importance to the present case, the court went further. It reasoned that although the D.C.Code provision was a later-enacted provision and despite its mention of "bankruptcy," it did not evidence the clear and manifest intention necessary to repeal by implication the Bankruptcy Act's distribution scheme for taxes established by Congress in 1926 (23 years before the enactment of the D.C.Code provision in 1949), stating:

It is unrealistic to assume that Congress intended to create an exception sharply altering this long and well-considered policy [reflected in the Bankruptcy Act's priority scheme] without express reference to the Bankruptcy Act.

*Greenbaum*, 223 F.2d at 636. It noted that "Congress expressed no reason—and we are aware of none—why the District's claim for its unpaid sales taxes has any greater equity than claims of other governmental units for such taxes." *Greenbaum*, 223 F.2d at 637.

An argument can be made that similar reasoning ought to apply to the issue of whether § 2012 trumps the choateness doctrine. The choateness doctrine is a long and well-considered judge-made doctrine governing the priority of tax liens securing the United States in competition with local tax liens. In enacting § 2012, Congress gave no reason why the District's tax claims ought to enjoy greater priority than would claims of a state tax collector.

However, the focus of *Greenbaum* was on the District's arguments being plainly at odds with equities that Congress had specifically addressed as a matter of bankruptcy policy in setting priorities for cases under chapter VII of the Bankruptcy Act.[4] Here, in contrast, the District does not attempt to avoid provisions of the Bankruptcy Code: the distribution is governed by nonbankruptcy law. In that nonbankruptcy law arena, there is no evidence that Congress had any concern about the choateness doctrine, a doctrine that Congress has never codified, and a doctrine of broad applicability in contrast to § 2012 in which Congress addressed the specialized issue of priority of D.C. sales taxes.

## C.

*Saidman* was not a bankruptcy case. Instead, it involved an assignment for the benefit of creditors, another type of insolvency proceeding. Under section 3466 of the Revised Statutes, 31 U.S.C. § 191, the United States was entitled to payment first of its debts when the debtor was insolvent. Similarly, D.C.Code § 47–2609 accorded first priority to the District's taxes. In determining that the D.C.Code provision ought to control, the court acknowledged that the provision was adapted from a Maryland statute, and then stated:

But in legislating for the District of Columbia Congress is not subject to the same limitations as are state legislatures, and we can hardly impute to it without more an intent to have the Dis-

---

4. Congress decided that it would be inequitable in a bankruptcy case for a taxing authority's unsecured prepetition taxes to be paid ahead of the expenses incurred in administering the estate and ahead of other governmental units' tax claims. Similarly, it decided that it would be inequitable for penalties owed a taxing authority to be paid ahead of or on the same level as other creditors' claims for pecuniary loss: paying the penalty serves to penalize those creditors, not the debtor.

trict taxes occupy a priority status equivalent only to that of state taxes. *Saidman*, 231 F.2d at 509 (citation omitted). It further reasoned that:

Section 47–2609 is a more recently enacted statute awarding priority to only one kind of tax claim whereas the Federal statute prescribes a general priority for all kinds of debts. The limited nature of the District's priority given by a later statute using language just as forceful as that of Section 3466 requires the inference that Congress intended to create an exception from the broad and general Federal priority in this one respect....

We conclude that Section 47–2609 as the later, more specific, and more limited enactment creates an exception to Section 3466.... We are reinforced in this conclusion by the consideration that since Congress has the obligation to provide revenues for both the District and the Federal Government, there could have been no real incentive for subordinating the District's taxes in an insolvency proceeding.

*Saidman*, 231 F.2d at 509–510.

This case is more like *Saidman* than *Greenbaum*. As in *Saidman*, nothing indicates that, in enacting a provision according the District a first priority, Congress intended that the "first in time, first in right" rule would apply in the case of federal tax liens (but not other liens) to defeat the District's statutory priority, as though Congress, in legislating regarding District sales taxes, were only a state legislature without power to override the choateness doctrine in the case of federal tax liens. Indeed, the case is a stronger case than *Saidman* because § 2012 is a specific congressional enactment, unalterable by the courts, whereas the choateness doctrine is but a judge-made rule of law subject to development over time as a matter of federal common law. Finally, § 2012 addresses a specific tax whereas the choateness doctrine is a rule of general applicability to all kinds of debts.

Section 2012 as the later, more specific, and more limited rule of law, and as a congressionally-enacted provision instead of a judge-made rule, creates an exception to the choateness doctrine.

### D.

The cases upon which the IRS relies are distinguishable. For example, *In re Davis Perry Enterprises, Inc.*, 110 B.R. 97 (D.D.C.1989), was a case in which the District did not invoke § 2012 in claiming priority and apparently did not argue that under *Saidman*, the D.C. statutory provision it invoked trumped the choateness doctrine. As another example, *In re University Wine & Liquors, Inc.*, 1991 WL 323425 (D.D.C.1991), was a case in which the District's claims were *unsecured* such that the rule of *Pearlstein* that priority of liens is determined by nonbankruptcy law had no applicability. *Greenbaum* required that priority of distribution between competing *unsecured* tax claims was to be determined by the Bankruptcy Code, not § 2012, but this court nevertheless recognized that a lien would have given the District the right to urge priority under § 2012.

A judgment follows.